JOSIAH RAMSEY *et al.* v. A. C. QUILLEN *et al.*

1. STATUTE OF LIMITATIONS. *Will run in favor of fraudulent grantee.* The statute of limitation in favor of a fraudulent or voluntary grantee begins to run against the creditor of the grantor, who seeks to enforce his debt against the property conveyed, from the time when such creditor has a right of action to test the validity of such conveyance.

2. SAME. *Same.* Held, therefore, seven years adverse possession under a conveyance, first by a son to whom land was conveyed, then by husband and wife to whom the son conveyed, and then by another son to whom the wife conveyed, after the right of the creditor accrued to enforce his debt, was a bar to his recovery.

3. LAND. *Joint occupation. Legal title.* In cases of joint friendly occupation of land, the benefit of such possession enures to the benefit of him who has the legal title.

4. SAME. *Same. By husband and wife.* Occupation by husband and wife, where the legal title has been conveyed to the wife, and registered, and such possession held openly under said deed, enures to the benefit of the wife. The wife cannot be deprived of the benefits of the statute, nor is she required to live apart from her husband in order to hold her land adversely.

FROM HANCOCK.

Appeal from the Chancery Court at Sneedville. H. C. SMITH, Ch.

F. M. FULKERSON for complainants.

W. P. GILLENWATERS for defendants.

FREEMAN, J., delivered the opinion of the court.

Complainants are creditors, by decree of this court, rendered in 1875, of respondent A. C. Quillen. This

decree is founded on an indebtedness, alleged in the bill, which existed before the war, evidenced by promissory notes. These notes, it is charged, had been wrongfully obtained by A. C. Quillen, and the bill, on which the decree mentioned was had, was filed in October, 1871, to assert that fact, and have a decree for the amount due on said notes, they being in possession of the payor.

On the 2d day of July, 1866, A. C. Quillen, the father, made a conveyance of the tract of land now in controversy to his son, L. B. Quillen, for the expressed consideration of about $2,500, to be paid, in the proportions therein specified, to his children, seven in number. On the 24th of September, 1869, L. B. Quillen conveyed the land to his mother, Mary Quillen, this conveyance purporting to be for a valuable consideration, and on the 23d of June, 1875, the mother conveyed to her son, Winfield S. Quillen. The bill in this case was filed July 3, 1876, and seeks to set aside all these conveyances, as both fraudulent in fact and voluntary, consequently void as to complainant, a creditor.

We need not discuss the question of fact, as to whether the deed from the father was fraudulent in fact, and made with the purpose of hindering and delaying the creditors of A. C. Quillen in the collection of their debt. We may assume, for the purposes of this opinion, that it was a voluntary conveyance, that the debt of complainants was then in existence, and that the debtor did not retain property sufficient to pay his debts, and, under a well-considered series of

opinions of this court, the deed would be void as against such creditor. We may add, that the principle of these cases makes no distinction between a conveyance of realty and personalty, nor do we think any such distinction can be successfully maintained.

Conceding the conveyances to be voluntary, and, under the facts, void as to the creditor, the case, as we understand it, turns upon the defense made by the respondents in their answer, of the statute of limitations of seven years. They claim to have been in possession, openly and notoriously, holding for themselves from the date of the first deed in July, 1866, that is to say, that L. B. Quillen went into possession and remained, holding under his deed, until his sale to his mother in September, 1869, and then the mother went into possession and held till her conveyance of June 23, 1875, when Winfield S. went into possession, and so remained until this suit was commenced, July 3, 1875.

The weight of the proof is very decidedly in favor of the fact being as claimed. Tax receipts are in the record, showing payment of taxes by these parties in accord with this view for all the period mentioned. It is true, however, that for most of the time the father and mother remained together on the land, but the son, L. B., is shown to have also been in possession at the same time, during the period he claimed it, before the conveyance to the mother. After this conveyance, the husband and wife occupid the land until some year or two before this suit was brought,

after which W. S., the last party to whom it was conveyed, seems to have been in sole occupation.

The question is, when did the statute commence to run as against complainants, or when did the right of action accrue in their favor to commence suit to enforce their claim against this land, in the hands of the voluntary grantee, or grantees, who set up the statute as a bar to the right asserted by this bill?

It need only be stated, that possession under a void deed for the period fixed by the statute, if purporting to convey title in fee simple, is as effective as if the deed were valid. See cases cited in note to Thomp. & St. Code, vol. 2, sec. 2763. The fact, then, that this deed was either fraudulent in fact or by construction in law, as being voluntary, could not prevent the effect of adverse possession, or interfere in any way with the result of such possession.

These principles being assumed, the question in this case is, as we have said, when does the statute commence to run in favor of a fraudulent or voluntary vendee or grantee, as against a creditor as to whom such conveyance is void and conveys no title?

Before the act of 1852, carried into the Code secs. 4288 to 4293, this was a vexed question, and the decisions of our predecessors were wholly irreconcilable and antagonistic to each other. In the majority of the cases it was held that the statute commenced to run against the creditor's right from the time the possession commenced under the fraudulent conveyance, notwithstanding it was then required that he should first have judgment against his debtor, and probably

a return of *nulla bona*, before he could file his bill to set aside the fraudulent conveyance. The theory of the opinions on this subject was, as stated by Judge Catron in *Reeves* v. *Dougherty*, 7 Yer., 222, that "the complainants came into a court of equity asserting their debtor's right to the property, treating, as they had the right to do, the fraudulent conveyance as merely void." He then argued that when the fraudulent vendee or grantee had held adversely to his vendor or grantor under the fraudulent conveyance for the length of time necessary to create the bar of the statute, the debtor's title was thus gone by virtue of the statute, and his right of property being lost, the creditor's right was also gone, and that the "creditor must take the title as it stands between the fraudulent vendor and vendee at the time he filed his bill or levies his execution. If time has confirmed his title to lands or slaves, it would defeat his right." See the cases on this view cited by Judge Cooper in *Mulloy* v. *Paul*, 2 Tenn. Ch. R., 160 *et seq.; Kigler* v. *Miles*, M. & Yer., 426; *Baker* v. *Morgan*, 5 Sneed, 521; 7 Yer., 222; *Porter's Lessee* v. *Cocke*, Peck's R., 30. In the cases of *Jones* v. *Reed*, 1 Hum., 335, and *Marr* v. *Rucker*, 347, it was distinctly held, on full consideration, that the opposite was the rule, and the statute did not commence to run till the creditor had judgment, and his right to proceed against the property thereby arose.

We think these latter cases announced the only sound principle applicable to the question. The fallacy that underlies the argument of Judge Catron, and

which runs through the cases in accord with his view, is in assuming that the statute of limitations had any effect whatever on the title as between the fraudulent vendor or grantor and his vendee or grantee, and that it required the operation of the statute to deprive the fraudulent grantor of his title to the property he had conveyed. It never had been doubted then or since but that, as between a fraudulent grantor and his grantee, a conveyance, however fraudulent in purpose, was perfectly good, and effectually carried the title to such grantee; so that there was no need for the statute of limitations in order to effectuate it, vest his title as against his grantor. Time gave no additional strength to his title as against him, and this on two grounds: First, the principle that the fraud of the grantor would probably have repelled him when seeking relief against his own conveyance; and, second, because he had a clear right, as against himself, to convey away the title to his property from any motive he chose, and he could not ask any court to relieve him from the consequences of such an act. The assumption that the statute of limitations operated to perfect the title in his grantee, was a mere fiction, and had no basis on which to rest, was merely a gratuitous assumption, serving only the purpose of a bridge in an emergency in order to reach a desirable conclusion. The fact was, the grantee's title was as good and perfect, as against his grantor, the next moment after the conveyance was complete as it ever could be. The statute was not needed to make it effectual, and did not do so.

Another error that is found in this theory, is the assumption that the creditor's right depended upon the debtor having the title in himself as between him and his grantor. The fact is the principle, as we have said, was the reverse. The debtor had lost his title by the conveyance, but that conveyance, while good as between grantor and grantee, was declared void as to the creditor, and he could proceed to subject the property to his debt regardless of its existence. A conclusive reply to the view, that the statute of limitations, as between the grantor and grantee, could affect the right of the creditor, is, that the grantor never had and never could have any right of action to assert the claim of the creditor. To hold that the statute runs against a party having no right to sue, never having had any, nor representing a party who had, can affect the right of that other party, would be to confound all rules on this subject, and be little short of absurd.

We think, beyond question, the true principle was announced in the two cases cited from 1 Hum., and the statute can only be held to begin to run, as against the creditor's right, when that right accrues in such form as that he is in condition to enforce it by legal proceedings. By the act of 1852, and sections of the Code embodying it, the creditor is authorized to proceed by bill to set aside a fraudulent conveyance without first having obtained a judgment, as formerly required, and to "subject the property, by sale or otherwise, to the satisfaction of his debt." And by sec. 4293, it is provided the statute shall not

Ramsey *v.* Quillen.

commence to run in favor of a fraudulent vendee, or voluntary possessor, until the creditor to be affected by the fraudulent or voluntary conveyance has a right of action to test the validity of such conveyance. This statute authoritatively established the true principle in such cases, that is, that the antagonism as to the property thus conveyed, was not between the vendor and vendee, but between the creditor, whose right was affected by the conveyance, and the grantee, and that time could not affect this right until he was in condition to enforce it by suit.

These principles being settled, the determination of this case is easily effected. The right to sue on his notes wrongfully or fraudulently in the hands of the debtor at the time the conveyance was made in July, 1866, is beyond question. He could have proceeded at once to enforce his claim by his bill, as he seems to have done, and in the same proceeding attacked the conveyance now sought to be set aside, and have had the property impounded by attachment, as authorized by sec. 4289. Being, then, in condition at that time to test the validity of the conveyance, the right being clear, if the parties have failed to bring suit for seven years to enforce their right, then the statute of limitations operates to perfect the title in the voluntary grantee, who is holding or claiming all this time under an assurance of title, purporting to convey a fee, notwithstanding it is void in its inception, as against the right of the creditor. Time, by virtue of the statute, gives the title, as against all persons not under disability, though the conveyance itself did

Ramsey *v.* Quillen.

not.   It is insisted, however, that this result is not attained in this case, because the wife only occupied the land with her husband.    We cannot see how this can change the effect of the occupation.    Where two parties jointly occupy land, the one having title and the other not, the occupancy enures to the benefit of the holder of the legal title.    This is well settled. The wife certainly cannot be required to separate from her husband, or live apart from him, in order to get the benefit of an adverse holding under a legal title conveyed to her.    This would be absurd.    In such cases the adverse holding is not against the husband's title, whether the alleged fraudulent conveyance is made by him or by another, but is against the right of the creditor.    The title being registered, he sees them in possession, and the registered deed fixes notice upon him that the possession is being held under the title thus shown, and is adverse to his right.    If, after this, he fails to sue within the period prescribed by the statute, and his rights are lost, his own laches has produced the result, and he cannot complain.

The result is, the chancellor's decree must be reversed and the bill be dismissed with costs.

COOPER, J., concurs in the result, but does not agree with the reasoning on the general question of statute of limitations before the act of 1852.