## McLemore *v.* Durivage.

### (*Jackson.*    April 22, 1893.)

1. STATUTÉ OF LIMITATIONS.    *Connecting possessions.*

    Connected, successive possessions of land, each for a period less than seven years, may be united to make out the requisite seven years' possession under the Act of 1819, where each successive possessor bore to his immediate predecessor the relation of a privy in estate— *e. g.*, that of heir to ancestor. (*Post, pp. 484–487.*)

    Code construed: §§ 3459, 3460, 3461 (M. & V.); §§ 2763, 2764, 2765, (T. & S.).

    Cases cited and approved: Marr *v.* Gilliam, 1 Cold., 488; Erck *v.* Church, 87 Tenn., 576.

2. SAME.    *Possession of infant's lands.*

    Joint or mixed occupation by an infant and his parent, or one standing *in loco parentis* of lands in which the infant claims the legal title, inures to the benefit of the infant's title. So likewise possession of land by parent, guardian, or one standing *in loco parentis*, claiming it for infant, inures to the benefit of his title. (*Post, pp. 484, 485, 492.*)

    Cases cited and approved: Davis *v.* Mitchell, 5 Yer., 281; Williams *v.* Walton, 8 Yer., 391; Knight *v.* Jordan, 6 Hum., 101; Stevens *v.* Bomar, 9 Hum., 546; Fancher *v.* DeMontegre, 1 Head, 40; Moore *v.* Walker, 3 Lea, 665; Ramsey *v.* Quillen, 5 Lea, 184; McBee *v.* Bearden, 7 Lea, 731; Welcker *v.* Staples, 88 Tenn., 49; Templeton *v.* Twitty, 88 Tenn., 595.

3. WRIT OF ERROR CORAM NOBIS.    *When it lies.*

    Writ of error *coram nobis* lies to reverse a decree depriving an infant of lands to which he has a perfect title, where, by accident or mistake in the service of process, the infant and his guardian failed to receive, without fault or negligence on their part, such notice of the pendency of the suit as would have enabled them to make defense. (*Post, pp. 487–494.*)

    Code construed: § 3823 (M. & V.); § 3110.

McLemore *v.* Durivage.

Cases cited and approved: Crawford *v.* Williams, 1 Swan, 341; Panesi *v.* Boswell, 12 Heis., 323; Jones *v.* Pearce, 12 Heis., 286.

FROM SHELBY.

Appeal from Circuit Court of Shelby County. L. H. ESTES, J.

WM. M. RANDOLPH & SONS for McLemore.

WATSON & FITZHUGH for Durivage.

WILKES, J. These two actions (by consent tried together) involve the title to lot 15, block 12, in Fort Pickering, at Memphis, Tenn.

The former is an action of ejectment and the latter is a petition for writ of error *coram nobis.*

They were tried by the Judge of the Court below, Hon. L. H. Estes, without the intervention of a jury, and, upon demand made by counsel before trial, a special finding of facts was made, upon which judgment was rendered in favor of Charles Durivage for the possession and title of the lot in controversy.

There is an appeal to this Court by the heirs of John C. McLemore, and many errors have been assigned, all of which have been considered and will be passed upon in connection with a statement of the facts of the case as they appear in the record and from the finding of the trial Judge.

The heirs of McLemore trace their title to a grant from the State of Tennessee by an unbroken and connected record chain, and they must, therefore, prevail in the ejectment suit unless the adverse claimant, Charles Durivage, can protect his possession under the statutes of limitation.

The claim and title of Charles Durivage rest upon the ground that through himself, his tenants, and those under whom he claims, he has had actual open, adverse possession under inclosure of the lot in controversy, under color of title, for more than seven years before action brought; and he therefore claims not only right of possession but a valid title to the lot under the provisions of the first and second sections of the act of 1819, compiled in the Code (M. & V.) as §§ 3459, 3460 and 3461.

It appears without dispute that lots 15, 16, 17, 18, 19 were inclosed together by a fence in 1871, and the inclosure has continued uninterruptedly ever since.

In 1871 Mrs. Cordelia Cook was in possession of the property, and built a house on two of the lots, which still remains, and she had possession of all the lots under one common inclosure until 1878, when she died of yellow fever.

Charles Durivage, Jr., was her only son and heir, and was present when his mother died; and, after her death, remained in possession of the property a short time only, dying during the same epidemic in 1878.

His wife, Vina Durivage, on the death of her

husband, took possession of the property, and, about six months after her husband's death, gave birth to a son, the present claimant, Charles Durivage, Jr.

She rented out the property and collected the rents until her death in 1883, and, it is claimed, for the benefit of her infant son.

Her mother, Mrs. Welsh, the grandmother of claimant, survived the daughter, and is still alive, and the tenant who was in possession of the property at the death of Mr. Durivage, after her death, attorned to Mrs. Welsh, and she has collected rents ever since, as she says, for the benefit of the claimant, her grandson.

One Dennis Moss was tenant in possession under Mrs. Durivage at the time of her death, and, after attorning to Mrs. Welsh, he continued in possession until September 26, 1887.

The claimant had no legal guardian until September 24, 1887, when his grandmother, Mrs. Welsh, qualified as such guardian, and soon thereafter, September 26, 1887, she leased the property for a term of five years to the defendant, Shipley. This lease, by its terms, embraces lots 16, 17, 18, and 19, but these lots were, and had been, inclosed and held with lot No. 15, under the same inclosures by the same parties since 1871.

The lessor and lessee both understand that all the lots inclosed together are embraced in the lease, but lot No. 15 is not named or referred to by number.

The statement of Mrs. Welsh is, that during the entire time the property has been held by her, and by her daughter, the mother of claimant, it was for his benefit, and the rents were collected for him. There is no testimony contradicting this statement. Several receipts given for rents from time to time are copied into the record, but they do not state on their faces that they are for rents paid for claimant. The record title of Mrs. Cook consists of a warranty deed from J. E. and Walter Merriman, of date October 17, 1877, conveying all of said lots 15, 16, 17, 18, and 19, in block 12.

It is claimed that title descended from Mrs. Cook to her son, Charles Durivage, Jr., and from him to his son, the present claimant.

A deed from John Hallum to J. E. Merriman, of date March 16, 1861, appears in claimant's chain of title.

A deed from McLean, Tax-collector, to Walter Merriman, of date April 4, 1870, also appears in his chain of title, but the title is not traced any further back.

It appears, therefore, that Mrs. Cook had possession of the lots and built the house upon them as early as 1871, or about six years before her deed from Merriman.

The Court below found that the deeds offered were good as color of title under the statutes, and that under them claimant and those under whom he holds had held adverse possession of the lot in dispute for more than seven years, and thereby

acquired an indefeasible title; that the lots were all under one fence, and all in possession of the ancestors of claimant, or under them by tenants, and that the title of Mrs. Cook, under the Merriman deed, coupled with her possession, descended, on her death, to her son, Charles Durivage, Sr., and, on his death, to his son, Charles Durivage, Jr., the present claimant.

The Court further found from the evidence that the property was held for the present claimant, and that there was a privity of estate between the successive holders, and their successive possessions inured to the benefit of the present claimant under the provisions of both statutes of limitation, and the fact that lot No. 15 was not known or recognized by its number, made no difference if it was inclosed and adversely claimed with the other lots.

The Court was further of opinion, and so held, that complainant held adverse possession through privies in estate for more than seven years, and thereby acquired a complete title under the first section of the Act of 1819, and had set up a valid and good defense under both sections, the one conferring title and the other a possessory right to the premises.

On the first of March, 1890, the K., C. & M. Railway and Bridge Company filed a petition in the Circuit Court of Shelby County, against Susan McLean Green *et als.*, No. 3565 on the reference docket, for the purpose of condemning a portion

of lot No. 15 for railroad purposes. Claimant and his guardian, Mrs. Welsh, as well as the heirs of McLemore, were made parties thereto.

On the same day, in the same Court, a separate condemnation proceeding was instituted by the same parties to condemn a portion of lots Nos. 16, 17, 18, and 19, adjoining lot No. 15, and embraced in the same inclosure, the number of this proceeding being 3562. To this latter suit claimant and his guardian were made parties, but the heirs of McLemore were not.

Notice in each case was served March 4, 1890, upon the guardian of claimant, but not on claimant himself. Copy of notice in the latter case was left with the guardian, but no copy of notice in the former case was left.

In the latter case a portion of lots Nos. 16, 17, 18, and 19 was condemned by regular proceeding, as provided by law. The damages were assessed at $2,000, and were paid to the guardian of claimant.

In the former case the guardian of claimant made no appearance or defense, and a portion of lot No. 15 was condemned, the damages assessed at $500, and paid into Court, and afterwards paid to the heirs of McLemore.

Under an order of reference, the Clerk reported that the title to the lot No. 15 was in the heirs of McLemore, and this report was confirmed by the Court.

Two months thereafter claimant and his guard-

ian filed a petition for writs of error *coram nobis*, alleging that the title to lot No. 15 was in claimant under his title and possession; that this fact was not known to the Court, or adjudicated in the condemnation proceedings, because not presented to the Court, and that, if it had been so presented, the judgment of the Court would have been different.

As an excuse for not appearing and making defense to said proceedings, it was alleged, and sustained by evidence, that notices of both proceedings Nos. 3565 and 3562 went into the hands of an officer on the same day; that he called upon the guardian of complainant, and told her that a suit had been commenced against her in the Circuit Court, and gave her a copy of notice in No. 3562, but none in 3565. She states that she was under the belief that there was only one suit, and that it involved the whole of the lots belonging to her ward, and in the same inclosure.

She could neither read nor write, and she gave the copy of notice in No. 3562 back to the officer, and requested him to carry it to her attorneys, Malone & Malone, and request them to represent her ward and herself.

The officer did so, and handed the copy of notice in No. 3562 to Mr. Malone, but said nothing to him about No. 3565.

Malone at once docketed No. 3562, and attended to that case, but had no information of the pendency of No. 3565.

Neither he nor the guardian knew that the guardian or claimant was a party to No. 3565, or had any interest in it. The guardian did not know the lots by their numbers, but believed and understood that her ward owned all the lots in the inclosure, and believed that the suit which she had employed the attorney to defend involved all of them.

The officer was not examined, but the attorney, Malone, substantiates the above statements, and says he did not know there was another suit, No. 3565, to which claimant was a party, or in which he had any interest; did not know the lots by numbers, and did not know that claimant had title to No. 15 or possession of same, but believed and understood that he was representing the entire property inclosed by the fence, and belonging to claimant. Hence he made no appearance in No. 3565, and had no notice of any step taken therein.

It appears from the evidence that, before the final judgment was rendered in No. 3565, Mr. Malone was informed that claimant had the title to lot No. 15, and that he was requested by Mr. Adams, the attorney of the railroad company, to file a petition in the case for him; but Malone, knowing nothing of claimant's title to the lot by its number, and laboring under the belief and impression that the entire property belonging to claimant was involved in No. 3562, declined to appear in No. 3565; and it seems very evident

that neither Adams, the attorney for the railroad company, nor Malone were cognizant of the fact that claimant was already a party to No. 3565. It is worthy of remark that no guardian *ad litem* was appointed for claimant.

The Court below was of opinion that sufficient excuse had been given for failing to make defense to the condemnation proceedings, and to justify the filing of the writ of error *coram nobis*.

The petitioner, in due course of proceeeding, assigned errors, and to these some sixteen demurrers were filed.

The railroad company, having paid into Court the value assessed on the property, and the lot having been condemned for its purposes, and occupied by it, the petition, as to the railroad company, was dismissed without prejudice as to the other parties.

The demurrers filed by the McLemore heirs were overruled, and the matters set up in the petition and proceeding *coram nobis* were heard with the ejectment suit by consent of parties, and the Court below gave judgment in both proceedings for claimant.

The judgment was, in effect, that claimant had title and right to possession of lot No. 15 under the ejectment suit, and also set aside so much of the judgment of condemnation in No. 3565 as adjudged the title to lot No. 15 to be in the McLemore heirs, and recalled and revoked so much of said judgment as found the McLemore heirs

entitled to the $500 paid in on the condemnation proceedings.

Without attempting to pass *seriatim* on all the contentions raised in the case, the Court is of opinion that the following statements of law and fact are conclusive of all material questions raised in each case:

*First.*—The deed from J. E. and Walter Merriman to Cordelia Cook, of date October 17, 1877, was a sufficient assurance or color of title coupled with adverse possession under inclosures to meet the demands of the statute, and give to her, and those claiming under her, title to the lot in controversy. See the statutes, Milliken & Vertrees compilation, §§ 3459 to 3461, and notes there cited.

*Second.*—The possession of Mrs. Durivage, the mother, and of Mrs. Welsh, the grandmother, is shown by the proof to have been for the claimant. This would result, moreover, as a matter of law, the title being in the claimant, and he being a minor. *Davis* v. *Mitchell*, 5 Yer., 281; *Williams* v. *Walton*, 8 Yer., 391; *Knight* v. *Jordan*, 6 Hum., 101; *Stevens* v. *Bomar*, 9 Hum., 546; *Fancher* v. *De-Montegre*, 1 Head, 40; *Moore* v. *Walker*, 3 Lea, 665; *Ramsey* v. *Quillen*, 5 Lea, 184; *McBee* v. *Braden*, 7 Lea, 731; *Welcker* v. *Staples*, 4 Pickle, 49; *Templeton* v. *Twitty*, 4 Pickle, 595.

*Third.*—The title and possession of Mrs. Cook, and the possession of Mrs. Durivage and Mrs. Welsh, can be joined under the statute so as to raise and complete the bar. *Marr* v. *Gilliam*, 1

Cold., 488–506; *Erck* v. *Church*, 3 Pickle, 576, 585, 588.

We are of opinion that the judgment and proceedings under the petition for writs of error *coram nobis* are correct.

The statutes (M. & V., § 3823) provide that " any person aggrieved by the judgment of the County, Circuit, or Chancery Court by reason of a material error in fact, may reverse the same upon writ of error *coram nobis* as herein provided."

Section 3829: The relief embraced in this article is confined to errors of fact, of which the person seeking relief has had no notice, or which he was prevented, by disability, from showing or correcting, or in which he was prevented from making defense by surprise, accident, mistake, or fraud without fault on his part.

The error of fact consisted in the possession under inclosure adversely for seven years of the lot No. 15 by the minor, Charles Durivage. This was a material fact not presented to the Court on the trial of No. 3565, and not adjudicated by the Court, and which, if presented, would have caused a different judgment.

Claimant was under disability, and by accident and mistake, without negligence or fault on his part, was prevented from setting up his claim to the property.

The excuse for failing to make defense to the condemnation proceeding is much stronger than in the case of *Crawford* v. *Williams*, 1 Swan, 341.

See also *Panesi* v. *Boswell*, 12 Heis., 323 ; *Jones* v. *Pearce*, 12 Heis., 286.

Upon the whole case, we are of opinion that there is no error in the proceedings and judgment of the Court below, and the judgment is affirmed, and all costs will be paid by appellants and their sureties.