Nelson and others vs. Jacobs.

---

NELSON and others, Respondents, vs. JACOBS, imp., Appellant.

*April 12 — May 24, 1898.*

*Foreclosure of land contract: Waiver of objection to judgment: Vendor and purchaser: Marketable title.*

1. In an action for the foreclosure of a land contract the proper judgment is one of strict foreclosure, but the entry of a judgment for a foreclosure and sale and conveyance of the land is a mere irregularity, which is waived by a defendant who resists a motion to have such judgment corrected, and he is precluded from afterward objecting thereto.

2. An open, notorious, and exclusive possession of land, claiming title and paying taxes, for twenty years before the commencement of an action therefor against the possessor creates a marketable title by virtue of our statute of limitations (sec. 4207, R. S. 1878), which a purchaser under a land contract who has stipulated for a clear and indefeasible title is bound to accept.

APPEAL from a judgment of the circuit court for Iowa county: GEO. CLEMENTSON, Circuit Judge. *Affirmed.*

This is an action to foreclose a land contract. The follow-

| 99 | 547 |
|-----|------|
| 106 | 146 |
| 99 | 547 |
| s107 | 137 |
| 99 | 547 |
| 113 | 2449 |
| 99 | 547 |
| 117 | 2432 |

Nelson and others vs. Jacobs.

ing facts appear from the record, and are admitted or found by the court:

On July 10, 1895, the plaintiffs, as parties of the first part, by N. B. Van Slyke, their agent, entered into a written contract with the defendant *Jacobs* as party of the second part, wherein and whereby, for and in consideration of one dollar, and a proper transfer and delivery of the personal property therein mentioned, and the further consideration of $12,000 in cash to be paid by the said *Jacobs* to Van Slyke, he, the said Van Slyke, as such agent, agreed, in effect, to have made and delivered to said *Jacobs* the deed of conveyance with clear and indefeasible title to the real estate described therein, consisting of 192 acres, as named in the contract, but which, by an accurate survey as therein provided, was reduced to 189.8 acres, at the rate of $110 per acre, and the cash payment mentioned reduced proportionately; that the cash payment be made on or before forty days from the day on which the deed should be ready for delivery, the same to be deposited with the First National Bank of Madison in escrow, and to be delivered upon the final cash payment, as therein provided for.

One William Nelson acquired title to the land by sheriff's deed on foreclosure sale, and such a deed was duly recorded in Dane county December 17, 1859. William Nelson thereupon went into the actual and exclusive possession of said real estate, including the triangular piece hereinafter mentioned, and soon thereafter protected the same by substantial inclosures, and he and his legal representatives have ever since and up to the time of the commencement of this action continued in the actual, open, notorious, and exclusive possession of said lands, claiming title thereto founded upon said written instrument and possession. On September 7, 1869, William Nelson made his last will and testament. Prior to October 29, 1869, he died. The will was admitted to probate in New York. Upon the proper authentication

therein the will was duly admitted to probate by the Dane county court February 8, 1870, and a copy thereof was duly recorded in Dane county at that time.    William Nelson, by his will, vested all the title to the land in question, which he acquired by such sheriff's deed, in the plaintiffs, as executors and trustees or otherwise.    On August 3, 1895, Van Slyke, as attorney in fact for the plaintiffs, and in pursuance of the powers of attorney from them to him, executed a deed of the premises described to said *Jacobs*, as previously requested by him, and delivered the same in escrow to the First National Bank on that day, to be delivered to said *Jacobs* upon his making such cash payment.    Said *Jacobs* was thereupon and on the same day notified of the execution and delivery of said deed in escrow.    Said *Jacobs* then refused to accept the same, upon the ground that the executors named therein could not delegate their authority to another to execute a conveyance of the real estate, and insisted that a conveyance of the same should be made directly to him from the general executors and trustees in addition to the deed so already executed.    To comply with the wishes of said *Jacobs*, Van Slyke thereupon obtained a deed dated September 9, 1895, properly witnessed, executed, and acknowledged, from said executors and trustees to said *Jacobs*, and deposited the same in escrow in the First National Bank September 12, 1895, to be delivered to said *Jacobs* upon his making the cash payment mentioned.    Said *Jacobs* was notified on that day of such deposit, and he was then and there requested to fulfill on his part the terms and conditions of said agreement, but he then and there refused, and September 13, 1895, made further objections in writing to the title, upon the ground that the triangular piece of land in the S. W. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$ of section 6, lying northwest of Corss street in Farwell's replat and addition to Madison, consisting of about fifteen acres, seemed to be in Durastus K. Cady and his heirs, and upon the further ground that such deed

from such executors and trustees should have been in pursuance of judicial sanction or permission. Said *Jacobs* was then assured, as the fact was, that said triangular piece of land had always been treated as part of the premises covered by the mortgage and by the sheriff's deed delivered to William Nelson on the foreclosure of that mortgage, and recorded December 17, 1859; that said William Nelson at that time went into possession of said triangular piece of land as part of the premises thereby conveyed, and that he and his representatives protected the same by substantial inclosures, and had occupied and used the same for agricultural purposes, and had been in the open, notorious, and exclusive possession of the same for more than twenty years prior to July 10, 1895, to wit, from December 17, 1859, claiming title thereto, and had paid all the taxes assessed against said land; that said Durastus K. Cady had removed from Wisconsin; that neither he nor his heirs had ever been in possession of said land, or any part thereof, and had never made any claim thereto; that in September, 1895, it had been ascertained that Durastus K. Cady was dead; that his widow and heirs were residing in Jefferson county, Missouri; that a deed could be procured from such widow and heirs releasing and quitclaiming their alleged title to said triangular piece of land for $50.

In order to meet all the objections of said *Jacobs,* and in order to avoid delay and expense of litigation, the plaintiffs paid said $50, and obtained a quitclaim deed to Van Slyke of said triangular piece of land, dated November 12, 1895, executed by the widow and the two sole heirs at law of said Durastus K. Cady, who died intestate in said Jefferson county in 1876. Said deed was recorded in Dane county December 7, 1895. Van Slyke, by quitclaim deed, conveyed the same to Thomas Nelson, one of the plaintiffs above named, and caused said deed to be recorded prior to December 16, 1895. Said deed from the Cadys had but one witness.

Objection being made thereto by said *Jacobs* upon that ground, the same was returned to Missouri, and attested by another witness, and then recorded, all before the summons and complaint in this action were served. Said Jacobs, with knowledge of the fact that the Cady deed was so corrected and recorded, refused to accept the deeds tendered September 12, 1895.

Thereafter, and before the commencement of this action, said *Jacobs* requested the attorney for the plaintiffs to bring, at as early a date as convenient, a suit in order to test the question as to the power of the executors and trustees to make such conveyance. Relying upon said title, said *Jacobs* had made conveyances of a portion of the property, and while the title might be satisfactory to him, it might be objected to by others to whom he expected to sell lots. *Jacobs'* attorney, at his request, suggested certain provisions of the said will to be incorporated into the complaint. In pursuance of the request of said *Jacobs* the complaint was there-after prepared, and the action commenced by the service of the summons and complaint upon said *Jacobs* December 24, 1895. On September 12, 1895, said *Jacobs* and wife conveyed to the defendant C. A. Beebe, by warranty deed, an undivided one-half of the lands embraced in the contract for $15,000, as recited in the deed, which deed was duly witnessed and acknowledged. On September 30, 1895, said *Jacobs* conveyed an undivided one-sixteenth interest in said lands by warranty deed to S. M. Jacobs. Subsequently, and prior to the trial of this action, he made other conveyances of portions of said real estate by warranty deed, claiming to be the owner thereof in fee simple. Prior to July 10, 1895, Van Slyke, as such agent, had, by lease commencing December 1, 1894, rented said land for one year from that date at $150 per year. It was the duty of said *Jacobs* to accept the deeds tendered September 12, 1895, and to make payment of the remainder of the purchase price of $11,758 forty

days thereafter, to wit, October 22, 1895, and the plaintiffs are entitled to interest on that sum from October 22, 1895. Said *Jacobs* is entitled to a credit on account of the annual rental of $16 to be deducted from the sum stated, leaving $11,742, with interest from October 22, 1895, due to the plaintiffs, making in all $12,415.20 at the time of the entry of judgment herein. The plaintiffs kept good their tender of said deeds so made until the time of the trial; but said *Jacobs* neglected and refused to make such cash payment and take possession.

As conclusions of law the court found, in effect, that the plaintiffs fully complied with the terms and conditions of the contract; that said deeds so tendered September 12, 1895, constituted a conveyance with clear and indefeasible title to said real estate; that the plaintiffs became entitled to the cash payment October 22, 1895, as stated; that said *Jacobs* had failed to comply with the terms and conditions of said contract by his refusal to accept said deeds so tendered, and by his refusal to pay the balance of the purchase price remaining due thereon; that the plaintiffs were entitled to recover such balance and interest, with the costs and disbursements of this action; that the deed to Van Slyke from the Cady widow and heirs and from Van Slyke to the plaintiffs prior to the commencement of this action completely extinguished any title that might have been asserted on behalf of said widow and heirs of Cady, and placed such title, if any, and such claim of title, in the plaintiffs; that the plaintiffs were entitled to judgment in the nature of a strict foreclosure *or otherwise*, as the plaintiffs might be advised. Judgment was ordered to be entered accordingly as of October 6, 1896.

Judgment was thereupon entered accordingly as of October 6, 1896. Subsequently to the entry of the judgment, on motion of the plaintiffs, an order was made December 18, 1896, permitting the plaintiffs to add as defendants Mary

E. Jacobs, Charles F. Cronk, Idella Cronk, C. A. Beebe, and
Ellie S. Beebe, and they were made defendants accordingly,
and service of the summons and complaint was made upon
them accordingly. Issues were joined by such new defend-
ants answering the second amended complaint, and such
proceedings were had thereon that the trial court, March 31,
1897, ordered and adjudged that the original judgment be
so amended as to bar and foreclose such new defendants, and
each of them, of all right, title, and interest in and to the
real estate described, and in any equity of redemption in
and to said premises after the sale and confirmation thereof,
as provided in said original judgment; and the original judg-
ment was therein and thereby amended accordingly.

From the judgment so entered as of October 6, 1896, and
as amended March 31, 1897, and the whole and every part
thereof, the defendant *William H. Jacobs* brought this ap-
peal August 18, 1897.

*Charles N. Brown*, attorney, and *F. J. Lamb*, of counsel,
for the appellant, argued, *inter alia*, that the judgment
should have been one of strict foreclosure, and the entry of
a judgment for the sale of the premises and for deficiency
was erroneous. *Button v. Schroyer*, 5 Wis. 598; *Baker v.
Beach*, 15 id. 99; *Landon v. Burke*, 36 id. 378; *Superior
Consolidated L. Co. v. Nichols*, 81 id. 656. The judgment is
erroneous in allowing interest on purchase money from a
date prior to the plaintiffs' acquiring such a title to fifteen
acres of the land as the defendant was bound to accept.
They base their claim of adverse possession upon a sheriff's
deed on foreclosure, which deed does not embrace that tract,
and will not avail them for that purpose. R. S. 1878, sec.
4211; *McEvoy v. Loyd*, 31 Wis. 142; *Furlong v. Garrett*, 44
id. 111; *Childs v. Nelson*, 69 id. 125; *Lampman v. Van Al-
styne*, 94 id. 417, 430. Their possession was not adverse. It
was their intent only to take and hold what was included
in the sheriff's deed. *Ayers v. Reidel*, 84 Wis. 276, 283;

*Dhein v. Beuscher,* 83 id. 316, 327; *Ricketson v. Galligan,* 89 id. 394, 397; *Allis v. Field,* id. 327, 333; *Kurz v. Miller,* id. 426, 433; *Ryan v. Schwartz,* 94 id. 403, 411; *Fuller v. Worth,* 91 id. 406, 411. The express provisions of sec. 4210, R. S. 1878, make the plaintiffs' claim of title to the fifteen acres presumably invalid. The court could not make their title "clear and indefeasible" as against the holders of the outstanding title by any judgment in a suit to which they were not parties. Story, Const. 264, 661; *Davidson v. New Orleans,* 96 U. S. 103; *McCabe v. Kenny,* 52 Hun, 514; *Fleming v. Burnham,* 100 N. Y. 1; *Sexton v. Rhames,* 13 Wis. 99; *Sanger v. Mellon,* 51 id. 560; Freeman, Judgments, § 154; *Landauer v. Espenhain,* 95 Wis. 169, 175. A title is doubtful which depends upon matters of fact to be proved by witnesses, such as adverse possession, where the parties who may claim adversely are not before the court. Sugden, Vendors, [386] 576. A purchaser will not be compelled to accept such a title. Fry, Specific Performance (3d Am. ed.), 428; *Cunningham v. Sharp,* 11 Humph. 116; *Lewis v. Herndon,* 3 Litt. 358, 14 Am. Dec. 68, and note; *Smith v. Hollenback,* 51 Ill. 223; *Moore v. Williams,* 115 N. Y. 586.

For the respondents there was a brief by *Bashford, Aylward & Spensley,* and oral argument by *R. M. Bashford.* They argued, among other things, that an adverse title acquired by prescriptive user is not for that reason doubtful, nor can the same be said to be unmarketable simply because the vendor is unable to show a regular and legitimate inception. *Gates v. Parmly,* 93 Wis. 294; Waterman, Specific Performance, § 411 *et seq.; Pratt v. Eby,* 67 Pa. St. 396; *Moser v. Cochrane,* 107 N. Y. 35; *Abrams v. Rohner,* 44 Hun, 507; *N. Y. Steam Co. v. Stern,* 46 id. 210; *Wright v. Young,* 6 Wis. 127; *Townshend v. Goodfellow,* 40 Minn. 312; *S. C.* 3 L. R. A. 739, and notes; 3 Washb. Real Prop. (4th ed.), 54; *School Dist. v. Benson,* 31 Me. 385; *Bowen v. Preston,* 48 Ind. 367, 374. The statute of limitations destroys

not only the remedy, but the right also, and operates as a conveyance or new source of title. *Sprecher v. Wakeley*, 11 Wis. 432; *Knox v. Cleveland*, 13 id. 245; *Lain v. Shepardson*, 23 id. 224; *Mather v. Hutchinson*, 25 id. 27; *Cahill v. Palmer*, 45 N. Y. 478; *Sherman v. Kane*, 86 id. 57; *McPherson v. Schade*, 149 id. 16.

CASSODAY, C. J.   The complaint demanded judgment that the defendants perform the agreement to purchase the land, and pay to the plaintiffs the remainder of the purchase price, with interest from October 22, 1895; in other words, the action was for a strict foreclosure of the contract.   The judgment entered is, in effect, for the foreclosure of the contract, a sale and conveyance of the land, a confirmation thereof, a disposition of the surplus moneys arising on the sale, if any, and, in case of a deficiency, that judgment be entered against the defendant *William H. Jacobs*, who is legally liable to pay the same.   We agree with the counsel for the appellant that it was error to enter judgment in that form.   The adjudications of this court are to that effect. *Button v. Schroyer*, 5 Wis. 598; *Baker v. Beach*, 15 Wis. 99; *Landon v. Burke*, 36 Wis. 378; *Church v. Smith*, 39 Wis. 492; *Superior Consolidated Land Co. v. Nichols*, 81 Wis. 656. Such objection to the form of the judgment is, at most, a mere irregularity.   It did not deprive the court of jurisdiction to enter the judgment.   Its entry was in violation of no statute.   Strict foreclosure is not the vendor's only remedy in such cases.   *First Nat. Bank v. Agnew*, 45 Wis. 131.

The question recurs whether the appellant's conduct was such as to waive the irregularity.   It appears that the cause came on for trial at the September term of the court for 1896, to wit, October 6, 1896; that the appellant was not able to submit to an examination at that time; that it was then stipulated in open court that the trial should proceed, and that the deposition of the appellant might be taken at

any time on three days' notice; that such notice was then waived by the plaintiffs, and it was consented that such deposition be taken before an officer named, October 16, 1896; that, upon the cause being tried October 6, 1896, the trial judge took the cause under advisement, in order that the appellant's.deposition so to be taken should be put in evidence; that the same was so put in evidence; that November 17, 1896, and after the final adjournment of said term, the trial judge, in pursuance of such stipulation, made and filed his findings, with a direction that judgment be entered thereon as of October 6, 1896; that November 25, 1896, judgment was entered thereon as of October 6, 1896; that November 27, 1896, notice thereof was given to the appellant; that no objection was made to such findings or judgment until December 1, 1896, when the appellant filed exceptions on the ground that the findings authorized a judgment otherwise than by a strict foreclosure; that thereupon the plaintiffs obtained an order to show cause why the judgment so entered should not be amended and modified so as to provide for a strict foreclosure of the contract instead of the provision therein contained for a foreclosure and sale of the premises, and for a judgment for deficiency against the appellant, and why said judgment should not be modified in other respects, and conform to such amendment, and the same came on to be heard at the December term of the court, and, the appellant appearing by his counsel, and *objecting* to the same on the ground that the court was without power to so amend or modify after the term at which the findings and judgment had been so entered and passed; and the court accordingly denied such motion, with $10 costs, December 17, 1896.

It is manifest from such conduct of the appellant that he was more anxious to have delay than he was to have the judgment in the form of a strict foreclosure, otherwise he would have consented to such modification. Since the findings and judgment were entered after the September term

upon the stipulation of the parties, it is quite obvious that they might have been amended after that term by like consent of the parties. The refusal of the appellant to so consent is evidence that he preferred to have the·judgment remain as it was, rather than to lose the opportunity of postponing the day of payment upon a mere technicality. The objection was purely technical. To allow it to prevail after the appellant had thus refused to consent to the correction would be to sacrifice the substantial rights of one party in order to stimulate the perversity and desire for further litigation by the other party. Certainly that should not be done in an equitable action like this. Such refusal to consent to such correction, when the same might have been readily done without delay and without expense, did not place the appellant in a favorable position to successfully invoke the aid of a court of equity to compel such correction after forcing the opposite party to submit to nearly two years' delay, and be to a considerable expense. This position is the counterpart of the well-settled rule which precludes a party from availing himself of an error which he might have had corrected had he called the attention of the trial court to the same at the proper time. Besides, the appellant having conveyed certain portions of the premises, as indicated in the statement, it may be unjust to have his ·grantees cut off by strict foreclosure, or compelled to pay more than they had agreed, when they, or some of them, may be relieved by reason of the judgment being in its present form. We must hold that the appellant has, by his conduct, precluded himself from making such objection available.

Error is assigned because the judgment requires the payment of interest from October 22, 1895, instead of from January 25, 1896; in other words, that the action was prematurely brought. This is based upon the assumption that the plaintiffs did not perfect their title to the whole of the land until they obtained and recorded the corrected Cady deed to the fifteen acres, December 16, 1895, and hence that the cash

payment did not become due until forty days thereafter, to wit, January 25, 1896. This admits, by implication, that the plaintiffs had a perfect title to all the land except the fifteen acres at the time the deeds were tendered, September 12, 1895. Upon the record before us it is manifest that the plaintiffs did then have a clear and indefeasible title to all the land covered by the mortgage; that is to say, all, unless the fifteen acres are to be excluded. The question recurs whether the appellant was justified in refusing the deeds tendered September 12, 1895, by reason of any alleged interest of the widow and heirs of Cady in the fifteen acres.

Undoubtedly he had the right to insist upon a marketable title. It appears that the fifteen acres were not covered by the sheriff's deed recorded December 17, 1859. Nevertheless it was found by the court, as stated, that William Nelson and the plaintiffs claiming under him had continued in the actual, open, notorious, and exclusive possession, including the fifteen acres, ever since December 17, 1859; that soon after that date, William Nelson, so in possession of such land, protected the same by substantial inclosures, and he and the plaintiffs had occupied and used the same for agricultural purposes, and had been in such open, notorious, and exclusive possession of the same for more than twenty years prior to July 10, 1895, claiming title thereto, and paying all taxes assessed thereon, and that none of the Cadys ever made any claim to the land, or any part thereof. There is no pretense that William Nelson so entered into possession of the fifteen acres in 1859 under Cady, or any grantor of Cady; but, on the contrary, it is found that such possession was adverse. There is plenty of evidence to support such findings. Had the widow and heirs of Cady brought an action to recover the fifteen acres on September 12, 1895, they would necessarily have been met by the statute, which declares that "no action for the recovery of real property or the possession thereof, shall be maintained, unless it appear that the plaintiff, his ancestor, predecessor, or grantor,

was seized or possessed of the premises in question, within twenty years before the commencement of such action." R. S. 1878, sec. 4207. After twenty years of peaceable and uninterrupted adverse possession a grant will be presumed. *Rooker v. Perkins*, 14 Wis. 79; *Scheuber v. Held*, 47 Wis. 340; *Bartlett v. Secor*, 56 Wis. 520; *Toomey v. Kay*, 62 Wis. 106; *Carmody v. Mulrooney*, 87 Wis. 552; *Lampman v. Van Alstyne*, 94 Wis. 417; *Wilkins v. Nicolai, ante,* p. 178.

In *Greenblatt v. Hermann*, 144 N. Y. 13, the defendant derived title under sale by administrators of N. pursuant to a decree of the surrogate court, August 10, 1881, to pay debts. April 13, 1892, the plaintiff agreed to purchase of the defendant for $19,500, and pay down $1,500. May 26, 1892, the defendent tendered a deed, but the plaintiff objected that the administrators' sale was defective on the ground that the petition did not purport to set forth the names of all the heirs of decedent as required by the statute. But it was held that the plaintiff made no case for recovering back the purchase money paid. In that case it was held that "a vendee of real estate, who refuses to take title on the ground of defect therein, must point out the objection, and give proof tending to establish it, or to create such a doubt in respect thereto as to make the title unmarketable." In *Hayes v. Harmony Grove Cemetery*, 108 Mass. 400, it was held that the possibility of debts against the estate of one through whom the vendor claims title, in the absence of affirmative proof thereof, was no cloud on the title, and would not prevent specific performance of the contract being decreed. In that case the vendor claimed title from the intestates whose estates remained unsettled. In *Webb v. Chisolm*, 24 S. C. 487, it was held that a purchaser cannot be compelled to take a doubtful title, but the court acts on moral certainty, and a purchaser will not be permitted to object to a title on account of a bare possibility.

In *Hedderly v. Johnson*, 42 Minn. 443, it was held: "To make a title to real estate unmarketable, so that specific per-

formance of a contract to convey will not be enforced against the vendee, there must be a reasonable doubt as to its validity. If the doubt raises a question of law, it must be a fairly debatable one,— one upon which the judicial mind would hesitate before deciding it. If the doubt depend on a matter of fact, and there is no doubt as to how the fact is, and if it may be readily and easily shown at any time, it does not make the title unmarketable." In that case Chief Justice GILFILLAN, speaking for the whole court, among other things, said: "Courts will not compel a vendee to take an unmarketable title when he has stipulated for a good one; and a title is deemed unmarketable, within this rule, where, although it may be good, there is a reasonable doubt as to its validity. The term 'reasonable doubt' is always used in this connection, because, as a doubt might be suggested or question raised as to most titles, it would go far to do away with the remedy by specific performance if a mere doubt raised, without regard to its character, were permitted to defeat the action. A doubt as to the title may be raised upon a question of law, or upon a question of fact, or upon both law and fact. It is impossible to state any precise and definite rule by which to determine when a doubt raised upon a question of law is to be deemed reasonable. Without going so far as some of the English cases, we can at least say that the doubt suggested must raise a question of law that is fairly debatable,— one upon which the judicial mind would hesitate before deciding it. . . . On the other hand, if there is no doubt as to how the fact is, and it may be readily and easily shown at any time, the title is not rendered doubtful by depending upon it. Thus, where the title depends on the bar of the statute of limitations, and it clearly appears that the real owner is barred, it is a marketable title. *Pratt v. Eby,* 67 Pa. St. 396. In such case the evidence to establish it must, from the nature of the fact, be easily accessible." The Pennsylvania case cited clearly sustains the position.

It has been held in this state that a tax title may be a marketable title. *Gates v. Parmly,* 93 Wis. 295. That a title depending upon the statutes of limitation may be marketable is supported by numerous adjudications. In addition to authorities cited in the brief of counsel for the plaintiff, see *Seymour v. De Lancey,* 1 Hopk. Ch. 436; *S. C.* 14 Am. Dec. 552; *Murray v. Harway,* 56 N. Y. 344; *Shriver v. Shriver,* 86 N. Y. 576; *Irving v. Campbell,* 121 N. Y. 353. Under the pleadings the plaintiffs were at liberty to show that the alleged Cady claim had been barred by the statute of limitation. *Morgan v. Bishop,* 56 Wis. 284; *Mead v. Nelson,* 52 Wis. 402; *Gould v. Sullivan,* 84 Wis. 665. Besides, it is at least very questionable whether a vendee who has affirmed the contract by conveying away portions of the premises by warranty deeds can rightfully refuse to perform any portion of his contract merely because there is a failure of record title to a small fraction of the land. We must hold that the plaintiffs tendered deeds of a good marketable title to all the premises described, September 12, 1895.

This makes it unnecessary to consider the questions of interest and costs discussed by counsel for the appellant.

*By the Court.*— The judgment of the circuit court is affirmed.