HATCH and others, Respondents, vs. LUSIGNAN and others, Appellants.

*March 21—April 17, 1903.*

*Adverse possession: Quieting title: Invalidity of instrument: Knowledge: Possession by husband for wife: Administrators.*

1. Secs. 4211, 4212, 4215, Stats. 1898, though in form they only bar any suit to question the title, serve nevertheless to vest complete legal title in the person who entered upon land and has held adverse possession as therein stated, and he may maintain an action to quiet such title.

2. If there has been such adverse possession for ten years under a written instrument which purports to convey the land, it is immaterial that the instrument is invalid and that the claimant had full knowledge of its invalidity.

3. Where a husband, as head of the family, occupied, managed and operated, as a part of the home farm, land to which the ostensible legal title was in the wife, such conduct on his part will be referred to her title and be considered her possession, in the absence of a showing to the contrary.

4. The evidence in this case is *held* to sustain findings to the effect that an administrators' deed of land ostensibly conveyed, and was understood and intended by all parties to convey, the whole title, including homestead and dower rights; that the administrators' sale was not fraudulent; that the land passed directly from the possession of the decedent's family to the possession of the purchaser at such sale; and that subsequent possession by one of the administrators was merely the possession of his wife, to whom the land was conveyed by such purchaser—so that adverse possession by said purchaser and said wife and her successors in title, founded on such conveyances, vested the title in them as against the heirs at law of the decedent.

APPEAL from a judgment of the circuit court for Rock county: B. F. DUNWIDDIE, Circuit Judge. *Affirmed.*

An action to quiet title, brought by the plaintiffs as children and heirs at law of Mary Hatch, deceased. The complaint bases their title upon a warranty deed from Henry Stonall to Mary Hatch, dated June 10, 1863, and continuous adverse possession thereof by Mary Hatch up to the time of her death, in 1887, and thereafter by her husband in the right of curtesy, and these plaintiffs as heirs at law, under an order of the county court settling their heirship. It is asserted that the defendants, as heirs at law of one Frederick A. Munden, make some claim to the land. It appears that said Frederick A. Munden, who was the owner of the land in question, died in February, 1852; that John W. Boyd and Seymour N. Hatch, the father of these plaintiffs, were at once appointed administrators of his estate, and that in 1853, under order of the county court, for payment of debts, they sold the land in question, which constituted the home farm of said Munden, to Henry Stonall, executing to him an administrators' deed purporting to convey the entire title to the land; that shortly

before such conveyance, the two administrators obtained from the widow of said Munden an ordinary quitclaim deed of all her rights, and especially her rights of dower, in and to said land, running to them by name, but not as administrators; that after the sale they paid to her, out of the proceeds, $50, and received a receipt acknowledging the same to have been paid for her relinquishment of dower rights. Stonall, without any intermediate conveyances, made the deed of 1863 to Mary Hatch, wife of Seymour N. Hatch, for the expressed consideration of $2,445.

The answer was, first, a general denial of plaintiffs' rights in the land, and two counterclaims, the first alleging that the conveyances to Stonall and by him to Mrs. Hatch were made by the administrators fraudulently and for the purpose of gaining title to Seymour N. Hatch; that said administrators took possession of said real estate immediately after the death of said Frederick A. Munden, and that no change thereof had taken place, but they had continued to hold it up to the time of the death of said Hatch, in August, 1899, and defendants, without laches, had remained in ignorance of said fraud until the commencement of the action; also, as a second counterclaim, that said administrators purchased, with moneys of the estate, the dower right of the widow of Frederick A. Munden, and enjoyed the same, receiving rents and profits, up to the time of her death in 1893. They prayed adjudication of title in fee simple to them, for possession, and for $20,000 damages for the unlawful withholding thereof. Upon the trial they attempted to amend by adding allegations and prayer for an accounting of these plaintiffs, as heirs at law of Seymour N. Hatch, for the value of the use and occupation by him. The reply set up the various statutes of limitation and adverse possession in plaintiffs' favor, and denied all allegations of fraud and all interest in the premises by Seymour N. Hatch.

The court found as facts substantially in accordance with

the position of the plaintiffs, namely, the receipt of the deed in 1863 by Mary Hatch, and adverse possession by her thereafter up to the time of her death in 1887, and adverse possession by her heirs under like color of title up to the time of the commencement of the action in 1901; also the delivery and recording of the administrators' deed to Henry Stonall in August, 1853, and its confirmation by the county court, adverse possession by him thereafter, and that neither of the administrators was directly or indirectly interested therein; that the transaction with the widow of Frederick A. Munden was purely and simply a relinquishment of her dower right, and that the sale to Stonall was understood and intended by all parties to be free from such dower right; that while some part of the premises in question might have been claimed by Munden as homestead, the ninety-four acres which would have included said homestead were incumbered by mortgage amounting to $389, which exceeded its value, after subtracting the wife's dower, and that an unascertained portion of the debts for which sale was made existed prior to the homestead exemption law of February 9, 1850; that the administrators had fully accounted for all sums coming to their hands from said real estate, including proceeds of such sale to Stonall ($783); that Stonall, immediately following his deed, entered into possession of the premises and exercised absolute control over them up to the time of the conveyance in 1863 to Mary Hatch; that the youngest of the children of Frederick A. Munden reached her majority in 1873; that for forty-eight years prior to the commencement of this action the premises in question had been openly, notoriously, and adversely occupied by Henry Stonall, Mary Hatch, and her heirs, and that no action had been brought by any of the heirs of Munden to question the same. Whereupon the court rendered judgment in accordance with the prayer of the complaint, quieting plaintiffs' title to the entire premises, from which judgment the defendants appeal.

For the appellants there was a brief by *Bushnell, Watkins & Moses, Ed. M. Lowry, H. A. Burdick,* and *Lyon & Norton,* and a separate brief by *A. R. Bushnell,* and the cause was argued orally by *Mr. Bushnell.*

For the respondents there was a brief by *Franklin J. Tyrrell* and *Cooper, Simmons, Nelson & Walker,* and oral argument by *J. B. Simmons.*

Dodge, J.   The right of the plaintiffs to the land in question, as owners, rests upon the application of the rules of law prescribed by secs. 4211, 4212, 4215, Stats. 1898, to the facts found by the court—that they and their predecessors in title have held adverse possession thereof for more than ten years, having entered under claim of title founded upon written instruments, as being conveyances of the premises in question.   If such facts existed, those statutes serve to vest in the plaintiffs complete legal title, although in form they only bar any suit to question such title.   *Nelson v. Jacobs,* 99 Wis. 547, 75 N. W. 406; *McCann v. Welch,* 106 Wis. 142, 145, 81 N. W. 996.   The findings of fact as to the possession and claim of title under which the plaintiffs and their predecessors have held are, however, vigorously attacked. The conveyances relied on consist of the administrators' deed in 1853 to Stonall, which we have no hesitation in considering, as did the court below, an ostensible conveyance of the whole title; also the warranty deed of 1863 from Stonall to Mary Hatch, the mother of the plaintiffs, the quality of which as an assertion of ownership and conveyance of the whole title to the premises cannot be questioned.   There is an apparent attempt to impugn the good faith both of Stonall and Mrs. Hatch in suggesting that they are chargeable with knowledge of illegality in the county court proceedings for the sale of real estate, by reason that it included the homestead; also of a fraudulent purpose of the administrators. This consideration, however, can have no weight.   Statutory

possession under a written instrument which purports to convey the land satisfies the statutory requirement, however invalid that written instrument, and however complete the claimant's knowledge of its invalidity. *McCann v. Welch,* 106 Wis., at page 147, 81 N. W. 996. The finding that Stonall adversely possessed the premises up to the time of conveyance to Mrs. Hatch, and that she adversely possessed them afterward, is supported by the evidence. True, Stonall never actually farmed the land, but, it being duly inclosed by fences, he is shown to have exercised at least one very significant act of ownership in 1855, in selling therefrom the dwelling house; and there is testimony, somewhat vague it is true, though not more so than should be expected after the lapse of nearly fifty years, to the effect that he received rent for said premises from Seymour N. Hatch, who did crop and graze the same after 1855. His claim of ownership was notorious enough that the land was assessed to him and he paid taxes thereon. It is true, also, that Mary Hatch is not shown ever to have manually worked this land or to have ever leased the same, but it was occupied, managed, and operated by her husband as the head of the family consisting of them and their children, as a part of the farm on which they resided. Such conduct by a husband with reference to real estate, the ostensible legal title to which is in the wife, must be referred to her title and be considered as her possession, in the absence of a showing to the contrary. *Cook v. Bellack,* 109 Wis. 391, 85 N. W. 325; *Mygatt v. Coe,* 152 N. Y. 457, 46 N. E. 949; *Potter v. Adams,* 125 Mo. 118, 127, 28 S. W. 490; *Ramsey v. Quillen,* 73 Tenn. 184, 192; *McLemore v. Durivage,* 92 Tenn. 482, 22 S. W. 207.

The most serious contention of the appellants, however, on this subject, and one which affects other branches of the case, is to the effect that the evidence discloses that the administrators, acting by Hatch, immediately after the death of Munden, took possession of this farm, and that such posses-

sion continued unbroken down to the time of Hatch's death in 1899, so that his occupancy and working of the farm during the period between the conveyance to Stonall and that from him to Mrs. Hatch, and also subsequent to the latter conveyance, do not justify any inference that they were referable to the ostensible title held under such conveyances. The argument would be cogent if the facts were as stated, but a careful examination of the entire evidence leaves us in no doubt as to the correctness of the court's finding that Stonall did take possession under his deed and transfer that possession to Mrs. Hatch at the time of his conveyance to her, and that Seymour N. Hatch's manual use and occupancy of the land were referable thereto. The only evidence in support of appellants' theory of occupation of these premises by the administrators is the testimony of several witnesses, in a vague and general way, that after the death of Munden the land was occupied by Hatch. None of them attempt to connect this occupancy immediately with the time of Munden's death, nor, indeed, to state when it commenced. On the other hand, there is positive evidence from several witnesses that Munden's family, or some members of it, continued to reside upon, occupy, and crop the farm up to the time when Stonall sold the dwelling house therefrom in 1855; and from one witness, who is apparently the most accurate and definite in memory of any of those presented, namely, the one who bought and moved off that dwelling house, nonoccupancy by Hatch or by the administrators prior to that time fully appears. We therefore conclude that whether the action of the administrators or of the county court in attempting to sell this land, including the undefined homestead right therein, was valid or invalid, and whether or not the administrators' deed did or did not convey the whole title or any title, still there is established by the finding that adverse possession under color of title, which, by the sections of the statute above referred to, so protects the plaintiffs against assault,

and so extinguishes any rights of others, as to make them the holders of the legal title, with right to have adjudged the invalidity of the claims made by the defendants against the premises.

Two counterclaims are earnestly discussed by the appellants, the presence of which in the pleadings, at least in the form now urged, is left in doubt by reason of the ambiguity of the rulings of the court at the close of the trial with reference to certain amendments. It will not, however, be necessary to discuss or decide as to whether the amendments were allowed as claimed by the appellants; nor, in the view taken of the facts, will it be necessary to consider whether they are of a character to be permissible against the cause of action set forth in the complaint. The first of these counterclaims is predicated upon the theory of a fraudulent sale of the land in question to Seymour N. Hatch, one of the administrators, in the course of which the administrators' deed to Stonall and the deed from Stonall to Mrs. Hatch were merely colorable transactions and steps in such scheme. The court, in a so-called conclusion of law, has wholly negatived the existence of any fraud; but, whether or not we treat that as equivalent to a finding of fact, an examination of the record discloses nothing to support the charge. The only thing urged by the appellants which tends in that direction is the asserted fact that Hatch took these lands into his possession immediately upon the death of Munden and has retained such possession ever since. This, if true, would doubtless be a circumstance having some tendency to prove the existence of the scheme asserted; but, as we have already said, no such fact appears. The clear preponderance of evidence is in accord with the findings that possession first passed from the family of the deceased, Munden, to Stonall, after the attempted conveyance to him, and that Hatch never had possession except first as a tenant of Stonall, and later as a representative of his wife, under her purchase.

· The second counterclaim is predicated upon the theory that the two administrators, with money of the estate, purchased the dower right of the widow of Munden, and that Hatch's asserted possession of the premises constitutes an enjoyment of that right, at least up to the time of her death, in 1893, for which he should account, as administrator, to the heirs of Munden. The court by the findings negatives the facts at the basis of this contention, for he finds that the quitclaim deed from Mrs. Munden, and the payment of the $50 out of the estate to her, were merely the method adopted under the law as it existed at that time for securing a relinquishment of her dower right to the purchaser, and that the administrators' deed to Stonall was understood and intended by all parties to be a conveyance of the whole title, so that Stonall paid into the estate the price for such dower interest. We agree with the court below that the facts support this inference, and therefore need not go over them in detail. Further in negation of the appellants' contention upon this counterclaim is the fact, already twice stated, that the administrators, as such, never did take into their possession the real estate or any part thereof, and have never received or enjoyed any profits from the alleged transfer of the dower interest, other than those which they received in the purchase price for the land, and for which they made due accounting as administrators.

We find nothing in the record to avert the conclusions reached by the trial court, nor to impugn the judgment rendered.

*By the Court.*—Judgment affirmed.