McCANN and others, Respondents, vs. WELCH and another, Appellants.

*February 8 — February 27, 1900.*

*Equity: Setting aside deed: Adverse possession under written instrument: Good faith: Cotenants: Remaindermen: Limitations: Laches.*

1. A court of equity will not entertain an action to set aside a deed after the grantee, founding his claim thereon, has acquired title by adverse possession.
2. Under sec. 4211, Stats. 1898, relating to adverse possession of land under claim of title founded on a written instrument, good faith in making such claim is not essential to render the possession adverse.
3. Under a conveyance to him ostensibly executed by his wife a husband took possession, immediately after the wife's death, of a cultivated farm which she had owned, and five days later the deed was recorded. For more than ten years thereafter, claiming title under the deed, he held complete possession of the land either by personal occupancy or by leasing, and also gave a mortgage thereon, which was recorded. Independently of the deed he was entitled to hold the premises by right of curtesy, and two children of the wife by a former husband were also entitled to possession as tenants in common with him immediately upon the death of their mother, but they never received any share of the rents or rental value of the land. *Held*, that as against such children the possession of the husband was adverse, under sec. 4211, Stats. 1898.

4. In an action, brought nearly fourteen years after the execution of the deed, to set it aside on the ground that the grantor did not have mental capacity to execute it, it appeared that when it was executed the children of the grantor and grantee were all present, all of full age, and all so conducted themselves that the scrivener understood that the conveyance was in accord with their wishes; that one of them, at least, had accepted pecuniary benefit from the mortgaging of the farm by the grantee; that at all times they had reason to anticipate that their father might convey the land for his own benefit, but made no objection until after he had conveyed it to a daughter and she, with knowledge of all this conduct, had subjected herself to contractual burdens which she probably would not have assumed had there been a timely assertion of plaintiffs' claim; and that in the meantime the means of defense had been seriously impaired by death, insanity, and impairment of memory of disinterested witnesses. *Held*, that although the statute (sec. 4221, Stats. 1898) barring the action was not pleaded, and assuming that as to said children the possession of the father was not adverse, yet their delay and its attendant circumstances were such that as to them a court of equity should refuse to entertain the action.

APPEAL from a judgment of the circuit court for Grant county: GEO. CLEMENTSON, Circuit Judge. *Reversed.*

On January 15, 1885, Mary Welch, wife of the defendant *Patrick Welch,* being *in extremis,* and holding the title to the home farm of 120 acres, a justice of the peace was called, who, in the same room with the defendant *Patrick Welch* and all of the children of the parties, prepared a deed of conveyance from the wife to her husband, *Patrick Welch,* for the expressed consideration of $500. The deed was then taken to the bed, and the wife's mark placed thereon, the pen being in her fingers, and they held by her brother-in-law, who had no interest in the matter. The deed was then witnessed by the brother-in-law and the justice, a certificate of acknowledgment subjoined, and was handed to the defendant *Patrick.* There was some evidence as to the defendant's paying the whole or a part of the consideration for the farm originally, and of the wife's desire, previously expressed, to make some such conveyance. The court found

complete incompetency on the part of the wife,— indeed, substantial unconsciousness of what was being done,— and held that the deed was never executed by her. She died the same night.

The defendant *Patrick Welch*, both for many years before and many years afterwards, resided upon the farm, and five days afterwards, to wit, January 20, 1885, recorded the deed, and every since his wife's death, either by personal occupancy or by leasing, has exercised complete possession, claiming title under the deed. On November 6, 1886, he mortgaged the property, and one of the plaintiffs (*Henry*) received a part or the whole of the proceeds of such mortgage. Again, in September, 1895, he made a further mortgage. Both mortgages were promptly recorded in the register's office. On October 12th, the defendant *Patrick* conveyed said premises to his daughter, *Bridget Halstead*, who was present at the time of the attempted execution of the deed from her mother, and who, in common with her brothers and sisters, had known all about that and subsequent transactions. The consideration of the deed to her was her agreement to pay certain sums of money to others, to support her father in a manner specified as long as he should live, to pay him annually certain sums of money, and to provide for his funeral and a monument.

The wife, Mary Welch, left surviving her six children, the plaintiffs *Maggie McCann* and *Mary Harris* being children by a former husband, and the other plaintiffs, together with *Bridget Halstead*, being children by the defendant *Patrick*. The plaintiffs *McCann* and *Harris* were not present at the time of the execution of the deed, nor are they shown to have had any actual knowledge with reference thereto, or with reference to their father's control over the premises since then, having resided, both before and after their mother's death, at a distance.

The present action was for cancellation of the deed, and

was commenced August 24, 1898. The judgment wholly canceled and set aside the deed from Mary Welch to *Patrick*, and canceled and set aside the deed from *Patrick Welch* to *Bridget Halstead* in so far as the latter purports to convey any greater estate than the life estate of the defendant *Patrick* in four sixths thereof, but made no modification of her contract for his support, etc. From that judgment both defendants appeal.

For the appellants there was a brief by *Bushnell, Watkins & Moses*, and oral argument by *A. R. Bushnell*.

For the respondents the cause was submitted on the brief of *Lowry & Clementson*.

DODGE, J. The findings of the court that Mary Welch was incapable of executing a deed, and that she neither knew nor understood what was being done, and had no knowledge and gave no consent to the delivery of the deed to her husband, are not antagonized by a clear preponderance of the evidence, and must stand, so far as material, as verities in the case. Such findings would support the judgment, unless plaintiffs are precluded from maintaining the action by their conduct or by lapse of time. The answer attempts to raise statutes of limitation, but wholly omits the only statute directly applicable to this action, namely, sec. 4221, Stats. 1898, which imposes a limitation of ten years upon certain equitable actions. It, however, pleads secs. 4211, 4212, and 4215, barring actions for the recovery of real estate after ten years of adverse occupancy under a written instrument. This is not an action for the recovery of real estate, and those sections have no direct application thereto as limitations upon the right to bring it. Adverse possession has, however, an effect other than and additional to mere bar of a possessory action, namely, to transfer at least the practical title and ownership from the former owner to the adverse possessor; and if it appear that this

result has been accomplished, and that the plaintiffs, or any of them, no longer have any practical ownership of or title to the property, they cannot maintain the action, for they have no interest to protect thereby. *Dumont v. Dufore*, 27 Ind. 263, 268; *Nelson v. Jacobs*, 99 Wis. 547.

This brings us to consideration of the question whether there has been adverse possession under a claim of title, exclusive of any other right, founding such claim upon a written instrument as being a conveyance of the premises in question, in compliance with sec. 4211, Stats. 1898. In considering the rights of the parties under this section there must be a severance of the plaintiffs, of whom *McCann* and *Harris*, being children of a prior marriage, were entitled to immediate possession as tenants in common with their father upon the death of their mother, January 15, 1885, while the others, being children of the defendant *Patrick* as well, have never yet had any right of possession or of action to recover the same, he being entitled, independently of the deed, to hold the premises by right of curtesy. We shall first examine whether there has been adverse possession under written claim of title as against *McCann* and *Harris*.

The actual and exclusive possession by *Patrick Welch* for more than ten years is not disputed. That such possession commenced upon the death of Mary under the deed ostensibly executed by her, and recorded five days later, and has been held under the same ever since, is established by his own undisputed testimony. The character of possession which will exclude the true title must be such that the owner of that title, if in charge of the property and in the exercise of due diligence, might be apprised thereof. *Kurz v. Miller*, 89 Wis. 426, 433. It cannot be doubted that the possession in this case has been of that character. If *McCann* and *Harris* had been in charge of this property,— a cultivated farm,— and had exercised due diligence, they could not but have known that *Patrick Welch's* possession was an-

McCann and others vs. Welch and another.

tagonistic to their right, although he was a cotenant. They were entitled annually to a share of the rents or rental value of the premises, and never received it. The public records, wherein all ordinarily careful people look to ascertain real-estate rights, have disclosed a deed purporting to give him full title since 1885, and a mortgage executed by him, which was itself an assertion of ownership. These things could not have taken place without coming to the notice of an owner in charge of his interests and exercising ordinary diligence even as against a cotenant.

We conclude, therefore, that all the elements of adverse possession under sec. 4211 exist as against these two plaintiffs, unless, as strenuously insisted by the respondents, the defendant *Patrick Welch* cannot predicate his possession upon the deed from his wife, for the reason that it is not a valid one and that he had knowledge of its imperfections.

This is no more than a contention that one may not acquire title by ten years' adverse possession unless his claim of title under a written instrument is made in good faith,— a proposition which is maintained by some courts, and is supported by some remarks in some of our own cases, but which is no longer open to debate in Wisconsin since the very full and conclusive discussion and decision of it negatively in *Lampman v. Van Alstyne*, 94 Wis. 417. Wherever the Wisconsin doctrine is maintained, no paper writing, purporting upon its face to be executed and to convey the land, has been held insufficient to support a claim of title such as may ripen into complete ownership by possession for the statutory period. A deed void upon its face will suffice (*McMillan v. Wehle*, 55 Wis. 685; *Whittlesey v. Hoppenyan*, 72 Wis. 140); a deed executed by a married woman who has no power to convey (*Sanborn v. French*, 22 N. H. 246; *Perry v. Perry*, 99 N. C. 270); a deed ostensibly by an agent, possessing no authority (*Millen v. Stines*, 81 Ga. 655); or signed by one *non compos mentis* (*Ellington v. Ellington*, 103 N. C.

54); or by one having neither title nor possession (*Webber v. Clarke*, 74 Cal. 11; *Love's Lessee v. Shields*, 3 Yerg. 405); a deed secured by fraud of the grantee (*Oliver v. Pullam*, 24 Fed. Rep. 127).

In the light of such uniform holdings we cannot doubt that the deed in question, published to the world by record, would serve as a support for the claim of title contemplated by sec. 4211, Stats. 1898, even though the grantee's acts in securing the same .had been more meretricious than they were.    We may say, parenthetically, that from the evidence we incline to the belief that the defendant *Patrick Welch*, relying on the knowledge of conveyancing which the justice of the peace was supposed to have, did in reality believe that this deed had accomplished the transfer of the title to him, although in law he doubtless had no right to so believe, and could not be said to be a *bona fide* holder under it, if that were necessary.    The underlying idea of this statute is not reward to the diligent trespasser, but rather of penalty upon the negligent and dormant owner, who allows another for many years to exercise acts of possession over his property.    The time necessary to render such occupancy effective under a deed is shortened, not in recognition of a good-faith claim by the occupant, but in recognition of the notice to the owner of the adversary character of that occupancy. More negligent is he who allows another to occupy his premises when he is notified that the occupancy is not accidental or subordinate by the exposure to him of a paper which conveys title if it is what it purports to be. The purpose of the statute is not to benefit him who fraudulently obtains such a conveyance, but to deny the use of the courts to him who negligently sleeps on his rights. The requirement of good faith in the few cases supporting it is in disregard or forgetfulness of the real purpose of statutes of adverse possession. From the foregoing the conclusion is obvious that all of the calls of the statute are satisfied, and that, even if the deeds

in controversy be now canceled, that cannot benefit these two plaintiffs, who are fully barred from recovering the land itself. They therefore should not be permitted to maintain this action.

As to the three other plaintiffs, children of *Patrick* and Mary Welch, the situation is very different, for they have never been in position to bring suit for possession, to which they cannot be entitled till their father's death. Possession by or under the life tenant has been held to be not adverse as to remaindermen. *Barrett v. Stradl*, 73 Wis. 385; *Falck v. Marsh*, 88 Wis. 680. Whether the rule of those cases applies where the person otherwise entitled to hold as life tenant in fact holds under an ostensible deed in fee from the common ancestor, we need not consider, in view of the conclusion we have reached on another question. Although these plaintiffs may have had no right of action for possession, and are not divested of their title by adverse possession of the defendants, they have had the right to bring their present action to cancel the ostensible deed from their mother ever since the moment of its delivery to *Patrick* in January, 1885. Had defendants seen fit to plead sec. 4221, Stats. 1898, no reason is apparent why its bar would not have been absolute. Courts of equity, however, are not dependent on statutes of limitation for their right to deny hearing to those who unduly have slumbered on their rights. This power has been exercised by those courts from the earliest times, with no fixed rule, however, as to the lapse of time necessary or sufficient to exclude a suitor from their forum. Very great lapse of time, if reasonably excused and without apparent hurt to the defendant, has been ignored; and, again, very slight delay, accompanied by circumstances of negligence, apparent acquiescence, or change of defendant's position, has sufficed. Pomeroy, Eq. Jur. §§ 418, 419, 817; *Badger v. Badger*, 2 Wall. 87; *Sullivan v. P. & K. R. Co.* 94 U. S. 806, 811. Enactment of statutes of express limitation upon distinctively

equitable actions has modified the position of the courts to·
some extent. In some aspects such statutes absolutely con-
trol the court's action, as, where the full statutory term has.
run and the excuses offered are not those recognized by
the statute. In other respects such statutes serve to suggest
a general policy, or an analogy to which courts of equity
yield voluntary compliance. For example, it is not probable·
that a court would now consider *mere* lapse of time less than
the statutory period sufficient to exclude a suitor if wholly
free from any circumstances of negligence or of embarrass-
ment to the defendant. *Ellis v. S. W. L. Co.* 102 Wis. 400,
407. Nevertheless, the proper exercise by a court of equity
of its judgment, subject to the limitations above suggested,
whether delay with its attendant circumstances is such that.
a plaintiff ought not to be permitted to invoke its beneficent.
jurisdiction, is by no means taken away by such statutes.
Pomeroy, Eq. Jur. § 419; *Coon v. Seymour*, 71 Wis. 340, 346;.
*Frederick v. Douglas Co.* 96 Wis. 415; *Cross v. Bowker*, 102·
Wis. 497.

In the case before us we have complete supineness on the·
part of the plaintiffs for more than the statutory period, not.
in ignorance, but with full knowledge and understanding, of
the aggression upon their rights now complained of. That.
silence and submissiveness commenced with conduct well
justifying the belief that they affirmatively acquiesced in the·
rights asserted by their father. They were all present at.
the time the deed was drawn and their mother's mark af-·
fixed, all of full age, and all so conducted themselves that the·
justice, Elwell, understood that the conveyance was in accord
with the wish of all of them. One, at least, has accepted
pecuniary benefit from the mortgaging of this farm by *Pat-·
rick* as his absolute property. Meanwhile defendants' means.
of defense have been seriously impaired. The sister of
the deceased Mary, who was her closest and most confi-
dential attendant, is dead. She probably knew more than

any one else of the dying woman's wishes and her ability to understand the transaction. Another nurse (Mrs. Reynolds) has become insane. The other disinterested witnesses (Elwell, the justice, and Daily, the brother-in-law) showed much impairment of memory from the fourteen-years lapse of time and, the latter certainly, from increased age. Very little testimony from such witnesses as these would have sufficed to overcome that of the interested plaintiffs, but their delay has impaired or destroyed it. Further, the plaintiffs have at all times had reason to anticipate that *Patrick* might further dispose of the land for his own benefit, and have preserved silence, dissembling their objections if they had any, until the defendant *Bridget*, with knowledge of all this conduct, has subjected herself to contractual burdens which there is no reason to believe she would have assumed had these plaintiffs asserted their present claims timeously. Such conduct as the foregoing brings these plaintiffs within the reasons which have induced courts of equity to bar their doors to applicants guilty of much less delay. *Cross v. Bowker, supra; Hamilton v. Menominee Falls Q. Co., post,* p. (352); *Smith v. Duncan,* 16 N. J. Eq. 240; *Kline v. Vogel,* 90 Mo. 239, 251; *Brown v. Buena Vista Co.* 95 U. S. 157, 161; 12 Am. & Eng. Ency. of Law, 550, note 2.

Respondents' counsel urges that, because they have seen fit to endure a cloud on it, there is no conclusion that they have abandoned their entire legal title. This might be conceded, and yet a court of equity not be inclined to interpose affirmatively to remove a burden under which they have rested without complaint for a dozen years, when others might suffer. We think these plaintiffs have acquiesced in the *status quo* too long for us now to disturb it at their request, and that the action should not have been entertained as to any of the plaintiffs.

*By the Court.* — Judgment reversed, and cause remanded with directions to dismiss the complaint.