POLANSKI, Special Administrator, Appellant, v. TOWN OF EAGLE POINT and others, Respondents.

*March 2—April 12, 1966.*

508

For the appellant there was a brief by *David H. Raihle* of Chippewa Falls, and *Aberg, Bell, Blake & Metzner* of Madison, attorneys, and *Gerald J. Bloch* of Madison of counsel, and oral argument by *Mr. Bloch.*

For the respondents there was a brief and oral argument by *Ingolf E. Rasmus* of Chippewa Falls.

HEFFERNAN, J. In response to the town's demurrer, the administrator asserts two reasons why the statute of limitations is not applicable: (1) That the town's possession of the property was permissive, not adverse, and (2) that it was beyond the legislatively delegated powers of the town to possess the property, and, therefore, in a legal sense, it could not be in possession or occupancy of the property so as to create an adverse use. We disagree with each of these contentions.

### *Was the township's possession adverse to Polanski and his heirs?*

It appears that plaintiff argues that the possession was not adverse since the purpose of the deed was to assure the township's being paid for the relief that was granted. If the plaintiff is arguing that what was created, in effect, was an equitable mortgage with an absolute deed given for security purposes only, he has failed to allege it, and has failed to allege any facts from which this court could spell out such an intention. Perhaps it is, in fact, impossible to secure the facts necessary to make such an allegation. Considering the facts as they are stated in the complaint, it is clear that the town holds under a deed and, as such, holds by virtue of a written instrument and is entitled to attempt the use of sec. 330.06, Stats., in bar of the action if the possession is adverse. Sec. 330.06 provides:

"PRESUMPTION ON ADVERSE HOLDING UNDER CONVEYANCE OR JUDGMENT. Where the occupant or those under whom he claims entered into the possession of any premises under claim of title, exclusive of any other right, founding such claim upon some written instrument, as being a conveyance of the premises in question, or upon

the judgment of some competent court, and that there has been a continual occupation and possession of the premises included in such instrument or judgment or of some part of such premises under such claim for ten years, the premises so included shall be deemed to have been held adversely; except that when the premises so included consist of a tract divided into lots the possession of one lot shall not be deemed the possession of any other lot of the same tract."

Our decisions interpreting sec. 330.06, Stats., and other adverse-possession statutes have repeatedly said that the possession contemplated must be open, notorious, exclusive, and, in a legal sense, hostile to the true owner. *Burkhardt v. Smith* (1962), 17 Wis. (2d) 132, 139, 115 N. W. (2d) 540.

Where it is admitted that the present possession is the result of a conveyance by a former owner, it is obvious that there will be no forcible entry. However, the occupation of property pursuant to a deed is presumptively and in fact an act adverse to and in derogation of the former owner's title.

American Jurisprudence has stated the rule thus:

"A vendee's possession becomes adverse . . . to his vendor . . . from the time a conveyance has actually been made to him. The possession of a grantee is presumptively adverse to his grantor. The practical utility of this rule is that a grantee may acquire title by adverse possession as against his grantor even though the conveyance under which he holds is defective." 3 Am. Jur. (2d), Adverse Possession, p. 244, sec. 162; see also 2 C. J. S., Adverse Possession, p. 649, sec. 93.

In *Spellbrink v. Bramberg* (1944), 245 Wis. 322, 331, 14 N. W. (2d) 38, we quoted with approval a prior statement of this court:

" 'Where one enters upon land under a recorded deed, which purports to give him a complete title, his possession becomes adverse to all the world.' " *Sydnor v. Palmer* (1871), 29 Wis. 226, 250.

See also *Bartlett v. Secor* (1883), 56 Wis. 520, 528, 14 N. W. 714, where it was pointed out that where a deed had been exchanged:

> "It seems to me very clear that in such case the possession of one would be adverse to the other, and if such possession continued for more than ten years, the former owner would be barred of his right, and a possession of twenty years under a parol agreement would be a bar also."

We accordingly conclude that the possession was adverse from the time of the execution of the deed. Certainly there can be no better evidence of the town's intention to assert its claim of title against all the world than the recording of the deed. The recording is public notice of the nature of the title asserted. The plaintiff herein takes the position that the possession of the property was not "adverse" until such time as the heirs or beneficiaries of Herman Polanski's estate demanded a reconveyance of the property and it was refused. Such position, we conclude, misconceives the necessarily adverse position that must inevitably arise in respect to title as between grantor and grantee where, as here, there is no assertion that the deed did not purport to grant an indefeasible title.

The assertion of plaintiff that adverse possession shall not commence until possession is demanded by the "true owners" is contrary to the very principle upon which adverse-possession statutes are based. As we stated in *McCann v. Welch* (1900), 106 Wis. 142, 148, 81 N. W. 996:

> "The underlying idea of this statute is not reward to the diligent trespasser, but rather of penalty upon the negligent and dormant owner, who allows another for many years to exercise acts of possession over his property."

There is no allegation that the occupation of the land has not been continuous since the time of the deed. This

is not a mere sporadic occupation which would not constitute continued and exclusive possession. *Zeisler Corp. v. Page* (1964), 24 Wis. (2d) 190, 198, 128 N. W. (2d) 414. The plaintiff has in fact alleged, "That the defendant since the date of conveyance of aforementioned, has maintained and possessed the premises and has rented the premises and retained the profits thereby received." The rental of land to a third party is held to be an adverse use. *Hatch v. Lusignan* (1903), 117 Wis. 428, 433, 94 N. W. 332.

We conclude that, though it were shown that the town was not in possession as a true owner, by virtue of its occupation of the property for more than ten years under a claim of title under a written instrument, it is an adverse possessor, and an action to dispossess it of the land is barred by the statutes of limitation. The occupation of the property under the deed is adverse to that of the Polanski estate and is not subordinate to it.

If there were doubt that the deed was sufficient to confer the fee upon the town, its occupation and use of land thereafter would prevent its title from now being questioned.

"The disseizor must unfurl his flag on the land and keep it flying so that the owner may see, if he will, that the enemy has invaded his domains, and planted the standard of conquest." 8 Marquette Law Review (1924), 104, 108; *Curtis v. La Grande Water Co.* (1890), 20 Or. 34, 23 Pac. 808, 810.

*Can a town which acquires property by an*
*ultra vires act assert the defense*
*of adverse possession?*

In addition, the plaintiff contends that though the occupancy be found adverse to the special administrator in terms of the statutes barring actions for the recovery of real property, nevertheless title cannot be acquired in this instance where the taking is not for a public purpose.

Sec. 60.01, Stats., provides in part:

"Each organized town is a body corporate and empowered to sue and be sued; to purchase, take and hold real and personal property for public uses and convey and dispose of the same . . . ."

The plaintiff asserts that the acquisition was "not for any public purpose" and concludes that on a demurrer that allegation must be accepted as a factual verity. We do not agree since whether a particular act or conduct is a "public purpose" is a matter of law and not of fact. Legal conclusions are not admitted on demurrer. *Miller v. Welworth Theatres* (1956), 272 Wis. 355, 359, 75 N. W. (2d) 286. Plaintiff, however, buttresses his claim with the assertion that sec. 49.025, Stats. 1943, provided that no person shall be denied relief on the ground that he has an equity in a home in which he lives, and further provides that no applicant for relief shall be required to assign his equity in his homestead as a condition for receiving relief. Plaintiff has alleged in his complaint that the conveyance was made "as a condition precedent to the deceased receiving general relief from the defendant." These are facts well pleaded that must be accepted as a verity on demurrer. We are obliged to conclude, assuming the truth of the allegations, that the town exacted an illegal condition from the deceased as a prerequisite to the granting of relief. The plaintiff would have us conclude from this that the acquisition of property under these circumstances was *ultra vires* and not for a public purpose, and since the transaction was void there could be no vesting of title as the result of the illegal transaction, or by adverse possession thereafter.

We do not agree. In the first place, the public-purpose doctrine is not designed to be used as a sword against a governmental unit or its taxpayers. It is a shield conceived for the purpose of protecting the public treasury from the onslaughts of those who would drain off its resources to the detriment of the governmental unit, at the

expense of its taxpayers and for private benefit. None of these elements are apparent here.

However, though it were conceded that the acquisition was not for a public purpose, and were we to find that the action of the town in insisting upon the conveyance prior to granting relief was illegal, we cannot thereby conclude that title could not be acquired by adverse possession.

10 McQuillin, Mun. Corp. (3d ed.), p. 24, sec. 28.11, recognizes distinction when dealing with an acquisition by adverse possession:

> "But while a municipality cannot purchase land for other than municipal purposes, it may sometimes acquire land by adverse possession, or by gift for other than corporation objects. . . . 'The cases cited in support of the exceptions do not go to the point that a town cannot acquire land by possession for other than municipal purposes, but only to the point that it is ultra vires for a town to purchase land for other than such purposes. We think this is quite a different proposition; for a town cannot purchase land without expending its moneys, and it has no right to expend its moneys, raised by taxation or otherwise for municipal purposes, for other purposes. The acquirement of land by possession does not involve an expenditure any more than does the acquirement of land by deed of gift or by devise . . . .' "

Whether the conveyance was contrary to "public purpose" and hence void cannot be raised by the plaintiff. The general rule as stated in Corpus Juris Secundum is:

> ". . . where a municipal corporation having power to acquire property for some purposes, but not for others, takes it for unauthorized purposes the transfer is not void but vests title in the corporation which may be questioned only by the state, a taxpayer, or some person authorized to represent the inhabitants of the municipality." 63 C. J. S., Municipal Corporations, p. 521, sec. 971.

In the case of *Roelvink v. Milwaukee* (1956), 273 Wis. 605, 79 N. W. (2d) 106, plaintiffs based a cause of action upon a claim that at the time of the conveyance

there was no legal public purpose for the acquisition of the property, and that therefore the acquisition was void. We therein held that the plaintiffs, who were seeking a reconveyance, were in no position to challenge the holding of the property by the city, as the challenge should have been made only by the public or someone acting for it. To reach that conclusion, we relied on the rule as stated in McQuillin.

" 'The power of a municipality to purchase or otherwise acquire real property can be questioned only by the state. The capacity of a municipal corporation to take a conveyance of land cannot, after the transfer has reached completion, be called in question in a collateral way, but this may be contested only by the state. In other words, the state alone can object to a municipality's want of capacity under its charter to hold lands acquired by purchase or by devise. "Where a general authority exists in a municipal corporation to buy real estate for any purpose, the vendor in such case, may not afterwards avoid his contract by insisting his deed is void because the corporation may have exceeded its powers in making the purchase. Only the state may inquire whether the corporation has transcended its powers." So, the amount of real estate which a municipal corporation may hold is a question only for the state.' " *Roelvink v. Milwaukee, supra,* page 610.

We likewise conclude that the estate of Herman Polanski cannot properly challenge the purpose for which the property was acquired. Plaintiff relies to some extent upon *Smith v. Sherry* (1882), 54 Wis. 114, 11 N. W. 465, holding that a tax deed was void, though the three-year period of limitations had passed, where the property concerned was never within the territorial limits of the taxing authority. The defect therein was jurisdictional, its facts are not analogous, and its holding is not controlling in the instant case.

Though the original acquisition may have been contrary to law (we are not obliged to decide that point),

we have long ago taken the position that the legality, honesty, or good faith in the original acquisition is irrelevant when considering the question of adverse possession. In *Peters v. Kell* (1960), 12 Wis. (2d) 32, 40, 106 N. W. (2d) 407, we said:

". . . it is immaterial whether such deed was obtained . . . through fraud in so far as the running of the ten-year limitation period prescribed by sec. 330.06, Stats., is concerned." See also *Spellbrink v. Bramberg* (1944), 245 Wis. 322, 14 N. W. (2d) 38.

Similarly in *Burkhardt v. Smith* (1962), 17 Wis. (2d) 132, 140, 115 N. W. 540, this court, speaking through Mr. Justice HALLOWS, stated:

"Fifty years ago this court stated actual occupancy of land to the exclusion of the true owner, regardless of whether in good faith or bad faith, whether by mistake of boundaries, or with intent to claim the land with full knowledge the claim is wrongful, satisfies the call of the statute."

We conclude that the same rationale applies here. Though plaintiff argues that the original occupation resulted from an illegal agreement, it is the policy of our law to put litigation at an end, to assure the stability of real-estate titles, and to protect those who maintain possession for the time specified by the statute under claim of title, while those who subsequently claim title remain dormant.

*By the Court.*—Order affirmed.