WISCONSIN DEPARTMENT OF NATURAL RESOURCES,
Plaintiff-Appellant,

v.

BUILDING AND ALL RELATED OR ATTACHED STRUCTURES
ENCROACHING ON THE LAKE NOQUEBAY WILDLIFE AREA,
Township 32 North, Range 21 East,
Township of Lake, Marinette County
Wisconsin DNR Section 10,
being part of Government Lot 1 and
Wied Trust of 1996,
Defendants-Respondents.

Court of Appeals

*No. 2010AP2076. Submitted on briefs June 22, 2011.
—Decided July 6, 2011.*

2011 WI App 119

(Also reported in 803 N.W.2d 86.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *J.B. Van Hollen*, attorney general, and *Robert M. Hunter*, assistant attorney general.

On behalf of the defendants-respondents, the cause was submitted on the brief of *David J. Herrick* of *Herrick Law Offices*, Niagara.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. HOOVER, P.J. The Wisconsin Department of Natural Resources (DNR) appeals a judgment awarding adversely possessed land to the Wied Trust of 1996 (the Wieds). The primary issue presented is which version of WIS. STAT. § 893.29 applies, as it was repealed and recreated twice during the time the Wieds adversely possessed the DNR's land. We refer to the 1965,[1] 1980, and 1998 versions of the statute, which, respectively, require forty years' adverse possession, twenty years' adverse possession, and twenty years' adverse possession with a fence. The DNR argues the 1998 version applies. It also argues the circuit court lacks authority

---

[1] While the parties and circuit court referred to the 1957 version of the adverse possession statute, we deem it more appropriate to refer to the 1965 version. The substance of both is the same.

to order a forced sale of DNR land to the Wieds. The circuit court concluded the Wieds obtained the DNR land by adverse possession under both the second and third versions of the statute. We affirm.

## BACKGROUND

¶ 2. The disputed DNR land is located on the south end of a peninsula on Lake Noquebay. In 1965, the Wied family purchased their abutting parcel, which includes the northern (landward) portion of the peninsula. Thus, the only land access to the DNR parcel is across the Wieds' land. The Wieds commenced mowing on the DNR parcel shortly after their purchase, and placed a lockable gate across the road/driveway serving both properties by 1970. The Wieds built a vacation house on the DNR land in 1986. The DNR filed a "complaint for possession of real property" in 2007, seeking removal of all physical encroachments and restoration of the land. The Wieds answered with both an affirmative defense and a counterclaim asserting they had acquired the land by adverse possession.

¶ 3. The circuit court concluded the Wieds' use of the DNR property was not sufficient to constitute adverse possession until 1970, when the gate was placed and mowing continued. Thus, after a bench trial where the parties had agreed that the 1965 forty-year statute applied, the court concluded the land was not adversely possessed for the requisite time. It ordered the Wieds to remove the house, foundation, and appurtenances and restore the land to a wild state.

¶ 4. However, prior to entering judgment, the court had invited a motion for reconsideration based on a recently decided case that held circuit courts could order forced land sales as a matter of equity, even if the

statutory requirements for a forced sale were not satisfied. *See Soma v. Zurawski,* 2009 WI App 124, 321 Wis. 2d 91, 772 N.W.2d 724.

¶ 5. At a hearing on the Wieds' motion for reconsideration, the court also raised and decided the issue of whether the twenty-year adverse possession statute could apply. The court concluded the 1980 version was satisfied, with adverse possession from 1986 to 2006. It held that the 1998 twenty-year plus a fence statute was also satisfied, because the four exterior walls of the house satisfied the fence requirement.

¶ 6. At the court's direction, the Wieds had a surveyor divide the DNR parcel into multiple sections. The survey included three sections from north to south, plus a section encompassing the driveway running along the eastern edge.[2] The court proposed that the northern and southern sections be subject to a forced sale. The middle section—containing the house, boat docks, and utilities—along with the driveway section, would pass by adverse possession. The court anticipated that the parties would obtain appraisals of the sections subject to a forced sale.

¶ 7. However, the record does not indicate, and the parties do not explain, what transpired next. There is a June 16, 2010 letter from the Wieds asking for clarification on how to proceed. The next item in the record is the July 23, 2010 judgment, which grants the northern, middle, and driveway sections of the DNR parcel to the Wieds by adverse possession. The DNR now appeals that judgment.

---

[2] There was also one additional section of the DNR parcel, consisting of the southern tip of the peninsula. However, the Wieds disclaimed any interest in that portion.

## DISCUSSION

¶ 8. When the Wieds acquired their land in 1965 and began adversely possessing the abutting DNR land in 1970, the existing adverse possession statute required forty years' possession to obtain title to state owned land. *See* Wis. Stat. § 893.10 (1965–66). In 1980, the statute was repealed and re-created, reducing the term of adverse possession to twenty years. *See* Wis. Stat. § 893.29 (1979–80); 1979 Wis. Laws, ch. 323, §§ 28, 34 (effective July 1, 1980). The statute was again repealed and re-created in 1998. *See* Wis. Stat. § 893.29 (1997–98), 1997 Wis. Act 108, §§ 3–7 (effective April 29, 1998). The 1998 revision did not alter the twenty-year requirement. However, it added the requirement that adverse possession of state owned land be "based upon a continuously maintained fence line which has been mutually agreed upon by the current landowners." Wis. Stat. § 893.29 (1997–98).

¶ 9. The DNR asserts that the circuit court's holding was based exclusively on the 1980 statute and argues that the court was instead obligated to apply the 1998 version. It further contends that the Wieds could not have adversely possessed for twenty years under the 1980 statute because it was repealed after only eighteen years.

¶ 10. The DNR ignores the circuit court's rationale. When vacating its original decision, the court explained:

> [E]ven with the new provision from 1998 that it has to be enclosed by a fence, what better substantial enclosure or fence can there be than the four walls of a building? . . . . They clearly meet either the substantial enclosure definition or fence line enclosing the property, and by that I mean the four walls of the building.

At a subsequent hearing, the court reiterated:

> I had no question finding that back in November and I have again no question, no problem finding that at this time. .... And I don't know how anybody can argue that a home is not a substantial enclosure, so that certainly has to meet the definition in either of the statutes, the one originally in effect back in 1986 or any changes thereto which might have occurred in 1998. Clearly ... that complies with that.

■

¶ 11. After scrupulous, repeated review of the DNR's brief, it appears the DNR does not challenge the circuit court's ruling that the 1998 statute was satisfied. Therefore, we deem the DNR to have conceded the validity of that holding.[3]

> This court has held that respondents cannot complain if propositions of appellants are taken as confessed which respondents do not undertake to refute. *Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493, 499 (Ct. App. 1979). We think the same holds true when an appellant ignores the ground upon which the trial court ruled and raises issues on appeal that do not undertake to refute the trial court's ruling.

*Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994).

¶ 12. Moreover, the DNR does not address the circuit court's conclusion that adverse possession began in 1970, due largely to the erection of a locked gate across the only road providing access to the DNR parcel

---

[3] We need not, and do not, resolve whether walls may satisfy the statute's fence requirement. We observe, however, that the walls here serve the same purpose as a fence in the adverse possession context: they give open and notorious notice of exclusive claim to the property within their confines.

from the north. And, as the circuit court observed, the other three sides of the DNR parcel were inaccessible by land. This provides further support for the circuit court's conclusion that the fence requirement was satisfied.[4] *See State v. Baudhuin*, 141 Wis. 2d 642, 648, 416 N.W.2d 60 (1987) (we may affirm on reasoning other than that employed by the circuit court).

¶ 13. We also reject the DNR's argument that, based on the 1998 repeal, the circuit court erroneously applied the 1980 version of the statute. A similar issue was addressed in *Petropoulos v. City of West Allis*, 148 Wis. 2d 762, 436 N.W.2d 880 (Ct. App. 1989). There, the adverse possessor commenced possession under the forty-year version of the statute. During possession, the 1980 revision reduced the time requirement to twenty years. We held that adverse possession statutes were prospective in nature and that the statute's repeal and re-creation did not terminate the running of the forty-year period which had already commenced. *Id.* at 767–68. The entire reasoning was as follows:

> No provision was made for the retrospective application of sec. 893.29.

> Of particular importance to this case is our conclusion that adverse possession statutes have prospective application only, and will not be given a retrospective application. They apply where possession is taken after the laws have gone into effect, and compliance with their provisions is necessary to obtain the benefit

---

[4] The DNR does not address what it is about the fence that must be "mutually agreed upon," or what it means for adverse possession to be "based upon" a fence. *See* WIS. STAT. § 893.29 (1997–98). We assume that it is the fence's existence and/or location that must be agreed upon, and that "based upon" means substantially so. Here, the house's and gate's existence and location are undisputed.

thereof. Furthermore, adverse possession statutes must necessarily be construed to be prospective because the purpose of adverse possession is not to reward one in possession.

*Id.* at 767 (footnotes omitted). For the purpose statement, *Petropoulos* cited *Polanski v. Town of Eagle Point*, 30 Wis. 2d 507, 141 N.W.2d 281 (1966).[5]

¶ 14. While related, the *Petropoulos* case is of limited assistance here. That case involved a situation where the adverse possessor sought retroactive credit under the twenty-year requirement for prior possession under the forty-year requirement, and where the new statute's shorter time requirement was more beneficial to the adverse possessor. Here, we are concerned with two versions both containing a twenty-year requirement, and the new version is less beneficial to the adverse possessor.

¶ 15. We cannot rely on *Petropoulos* as setting forth any general rule that issues concerning prospective versus retroactive application of adverse possession statutes should be resolved against the adverse possessor. Contrary to any such implication in *Petropoulos*, the supreme court in *Polanski*, referring to "the very principle upon which adverse-possession statutes are based," stated, " 'The underlying idea of this statute is not reward to the diligent trespasser, but rather of penalty upon the negligent and dormant owner, who allows another for many years to exercise acts of possession over his property.' " *Polanski*, 30 Wis. 2d at 513 (quoting *McCann v. Welch*, 106 Wis. 142, 148, 81 N.W. 996 (1900)).

---

[5] For its prospective/retrospective application statements, the court cited an attorney general decision without discussion. *See Petropoulos v. City of West Allis*, 148 Wis. 2d 762, 767, 436 N.W.2d 880 (Ct. App. 1989).

¶ 16. Additionally, while *Petropoulos* states in broad terms that adverse possession statutes are prospective, the holding is reasonably limited by its preceding statement that the statute there did not provide for retroactive application. The decision does not provide the legal origin of that statement; however, it might have been WIS. STAT. § 990.06 (2009–10), "Repeal or change of law limiting time for bringing actions."[6] This statute has remained unchanged since at least 1979.

■

¶ 17. As relevant, WIS. STAT. § 990.06, provides, "[T]he act repealed shall be held to continue in force and be operative to determine all such limitations and periods of time which shall have previously begun to run unless such repealing act shall otherwise expressly provide."[7] We therefore agree with the Wieds that to terminate an already running period of adverse possession, the 1998 version of WIS. STAT. § 893.29 must contain an express statement to that effect. It does not. We reject the DNR's contention that § 893.29(2m) is the *express* provision envisioned by § 990.06 based on "the negative implication to be drawn from *what is not included*" in that subsection.[8]

---

[6] All subsequent references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

[7] The preceding language of WIS. STAT. § 990.06 refers to rights or remedies that "accrue" subsequent to the new statute's effective date. This language is also consistent with our application of the statute because the DNR's action for ejectment accrued prior to the 1998 revision of the adverse possession statute.

[8] WISCONSIN STAT. § 893.29(2m) provides: "Subsection (1) does not affect title to or interest in real property obtained by

651

¶ 18. In the absence of an express provision to the contrary, the rule under *Petropoulos* is that one who adversely possesses under an earlier version of the adverse possession statute may continue possession under the terms of that statute even after its repeal and re-creation. Thus, the circuit court properly determined that title to the disputed DNR land transferred by adverse possession from 1986 to 2006 under the 1980 version of WIS. STAT. § 893.29.

¶ 19. The DNR additionally argues that, even if the 1980 version of the statute applies, there was insufficient evidence supporting the circuit court's adverse possession determination. That argument is inadequately developed. The argument ignores the circuit court's factual findings and fails to address the alternative, "usually cultivated and improved" component of adverse possession. *See* WIS. STAT. § 893.25. We will not decide issues that are not, or are inadequately, briefed. *State v. Flynn*, 190 Wis. 2d 31, 39 n.2, 527 N.W.2d 343 (Ct. App. 1994). Moreover, the DNR fails to reply to the Wieds' fully developed argument in response. *See Charolais Breeding Ranches*, 90 Wis. 2d at 109 (unrefuted arguments are deemed conceded).

¶ 20. The DNR next argues the circuit court lacks authority to order it to sell any portion of its land. Because we affirm the judgment for adverse possession in its entirety, we need not resolve this issue. Were we to reach the issue, however, we would affirm the circuit court's ruling that it has such authority.

adverse possession, prescription or user under s. 893.25, 893.26, 893.27 or 893.28 before April 29, 1998."

¶ 21. The DNR first argues that the circuit court could not order any sale that fails to comply with the requirements of Wis. Stat. § 843.10, despite the *Soma* decision. That argument is frivolous. *See Soma,* 321 Wis. 2d 91, ¶¶ 9–11 (a prior supreme court case "plainly holds that a forced sale may be based on authority other than § 843.10"). The DNR further argues that no forced sale may be ordered against the state or its subdivisions. The Wieds respond with a well-developed argument that requires a reply. The DNR fails to do so and, therefore, concedes the issue. *See Charolais Breeding Ranches,* 90 Wis. 2d at 109.

¶ 22. Finally, the DNR argues in its reply brief that the 1965 forty-year adverse possession statute should apply. We will not address an argument first presented to us in a reply brief. *See Swartwout v. Bilsie,* 100 Wis. 2d 342, 346 n.2, 302 N.W.2d 508 (Ct. App. 1981). We therefore grant the Wieds' pending motion to strike the offending portion of the DNR's reply brief.

*By the Court.*—Judgment affirmed.