COURT OF APPEALS
DECISION
DATED AND FILED

June 3, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2025AP437-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2024CF3159

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

      PLAINTIFF-RESPONDENT,

  V.

T.A.W.,

      DEFENDANT-APPELLANT.

      APPEAL from an order of the circuit court for Milwaukee County: MARK A. SANDERS, Judge. *Affirmed*.

      Before Donald, P.J., Geenen, and Colón, JJ.

¶1    GEENEN, J. Thomas[1] appeals from an order of the circuit court authorizing the involuntary administration of medication to restore Thomas to competency to stand trial under WIS. STAT. § 971.14 (2023-24).[2] Thomas argues that the State failed to prove the four factors set forth in *Sell v. United States*, 539 U.S. 166 (2003), by clear and convincing evidence. In particular, he says that the State failed to demonstrate that it had an important interest in prosecuting Thomas, and his individualized treatment plan was constitutionally inadequate. We disagree with Thomas and affirm the circuit court's order.

**BACKGROUND**

¶2    According to the criminal complaint, police officers detained Thomas because he matched the description of a retail theft suspect. Officer Dalton[3] attempted to handcuff Thomas, but Thomas tensed his muscles and tried to break free. The officers responded by pulling Thomas to the ground, but once on the ground, Thomas kicked at Officer Dalton and grabbed at the Taser in Officer Dalton's holster. The officers eventually placed Thomas in handcuffs, and Officer Dalton "sustained numerous abrasions to his hands and knees" in the process of arresting Thomas. The State charged Thomas with resisting an officer causing a soft tissue injury, a Class H felony, and misdemeanor retail theft. WIS. STAT. §§ 946.41(2r), 943.50(1m)(b), 943.50(4)(a).

---

[1] We use the pseudonym "Thomas" to refer to the defendant in this case for both ease of reading and to protect the confidentiality of the proceedings.

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

[3] We use the pseudonym "Officer Dalton" because he is statutorily defined as a crime victim. WIS. STAT. RULE 809.86(3).

2

¶3      At the time of Thomas's arrest, he was 40 years old with a significant criminal record beginning when Thomas was an adolescent and resulting in his incarceration on four occasions.[4]  Thomas's juvenile record shows that he was adjudicated delinquent for one count of first-degree sexual assault of a child.  As an adult, Thomas has been charged with various crimes in numerous different cases, including retail theft, taking and driving a vehicle without consent, disorderly conduct, manufacture/delivery of THC and cocaine, and multiple violations of the sex offender registry.  Thomas's competence to stand trial has been evaluated in several of those cases; in all but one, Thomas was deemed incompetent to proceed, and the charges were dismissed.

¶4      At Thomas's initial appearance, the circuit court ordered a competency evaluation under WIS. STAT. § 971.14.  Bail was not considered.  After receiving the competency evaluation report—which indicated a diagnosis of unspecified schizophrenia spectrum or other psychotic disorder—and holding a hearing on the issue, the circuit court declared Thomas incompetent and committed him for treatment because, if treated, he was likely to become competent within the statutory time.  The commitment order took effect on August 13, 2024.

¶5      On December 18, 2024, Thomas was admitted to Sand Ridge Secure Treatment Center ("Sand Ridge"), and Dr. Andrew Kordus met with Thomas that same day.  Dr. Kordus prescribed Risperdal, an antipsychotic, to Thomas and informed him that he was, at that time, free to refuse it.  Thomas refused all doses.

---

[4] During each period of incarceration, Thomas incurred multiple major and minor conduct reports, mostly related to disruptive conduct, and in two of his four periods of incarceration, Thomas was elevated to maximum custody due to conduct issues.  Thomas also had his community supervision revoked at least three times.

¶6      Dr. Kordus met with Thomas again on January 3, 2025. Dr. Kordus observed that Thomas was "profoundly disorganized" and exhibited "prominent delusions." Consequently, Dr. Kordus was unable to meaningfully discuss with Thomas the advantages and disadvantages of medication. Dr. Kordus agreed with the initial diagnosis of unspecified schizophrenia spectrum or other psychotic disorder but added that Thomas had a likely diagnosis of schizophrenia. Dr. Kordus determined that only medication would alleviate Thomas's psychotic symptoms stemming from his mental illness. Dr. Kordus reviewed Thomas's medical history and learned that Thomas had been successfully treated with a six milligram dose of Risperdal in 2010.

¶7      In light of his evaluations of Thomas, Dr. Kordus submitted a motion for an order involuntarily medicating Thomas. He included an individualized treatment plan providing for three oral medications. Dr. Kordus initially wanted to try Risperdal, starting at the minimum effective daily dose of two milligrams and increasing the dose if needed for efficacy to a maximum dose of eight milligrams. If Risperdal was ineffective or resulted in an intolerable side effect, Dr. Kordus would stop administering Risperdal and instead administer Haldol, beginning with a 5 milligram dose and increasing if needed for efficacy up to a maximum dose of 40 milligrams. If neither Risperdal nor Haldol worked, Dr. Kordus planned to administer Olanzapine first as a 10 milligram dose, with an increase to a maximum dose of 30 milligrams if necessary for efficacy. For all of these medications, Dr. Kordus intended to "use the lowest effective doses of medications necessary," and he planned for Thomas to take his medications "at bedtime."

¶8      The circuit court held a hearing on the motion for involuntary medication at which Dr. Kordus testified. Dr. Kordus's testimony was largely

consistent with the above facts related to Thomas's diagnoses and treatment plan.[5] The circuit court found Dr. Kordus's testimony credible, and it concluded that the State satisfied its burden to prove the second, third, and fourth *Sell* factors. The circuit court took additional time to decide whether the State satisfied the first *Sell* factor in light of this court's decision in *State v. J.D.B.*, 2024 WI App 61, 414 Wis. 2d 108, 13 N.W.3d 525, *review granted*, 2025 WI 8, ___ Wis. 2d ___, 18 N.W.3d 694.

¶9 Three days later, the circuit court granted the involuntary medication request after it concluded that the first *Sell* factor was satisfied (*i.e.*, the government had an important interest in prosecuting Thomas). It observed that Thomas was charged with a Class H felony related to harming a police officer, just as the defendant had in *J.D.B.* The circuit court determined that the underlying offense in *J.D.B.* involved more violence than Thomas's alleged offense, but it nevertheless concluded that the offenses were equally serious for purposes of *Sell* because Thomas both wounded Officer Dalton and attempted to seize his Taser. The circuit court explained that Thomas's conduct as described in the criminal complaint came close to satisfying the elements of attempting to disarm a police officer under WIS. STAT. § 941.21.

¶10 The circuit court also concluded that special circumstances did not totally undermine the State's interest in prosecuting Thomas. The court observed that it had no information upon which it could conclude that Thomas would be subject to civil commitment in the future pursuant to WIS. STAT. ch. 51 or as the

---

[5] We observe that Dr. Kordus's testimony differed slightly regarding the order of medications outlined in Thomas's individualized treatment plan. In the plan, Dr. Kordus wrote that he would first administer Risperdal and add Olanzapine to the Risperdal if necessary, then taper off the Risperdal. If Thomas failed to respond to either medication, Dr. Kordus would administer Haldol. Thomas does not raise this discrepancy as an issue, so we discuss it no further.

result of successfully asserting at trial a defense of not guilty by reason of mental disease or defect ("NGI"). Moreover, Thomas's lack of bail and time spent in custody prior to his transfer to Sand Ridge did not defeat the State's interest because Thomas was a 40-year-old repeat offender who had grabbed at Officer Dalton's Taser. Having concluded that the State satisfied all four *Sell* factors and that Thomas was not competent to refuse treatment, the court ordered that Thomas be involuntarily medicated.

¶11    Thomas appeals.[6]

## DISCUSSION

¶12    On appeal, Thomas argues that the circuit court's involuntary medication order violates his constitutional right to refuse involuntary medication under *Sell*. Thomas has a constitutionally protected liberty interest in avoiding the unwanted administration of antipsychotic drugs. *State v. Fitzgerald*, 2019 WI 69, ¶13, 387 Wis. 2d 384, 929 N.W.2d 165. If the State seeks an involuntary medication order during criminal competency proceedings, the goal of that order is limited to "rendering the defendant *competent to stand trial*." *Sell*, 539 U.S. at 181.

¶13    In *Sell*, the Supreme Court set fourth four factors that the State must demonstrate before forcibly medicating an accused person to competency to stand trial: "(1) the State has an important interest in proceeding to trial; (2) involuntary medication will significantly further the State's interest; (3) involuntary medication

---

[6] Prior to briefing, we granted Thomas's motion to stay the involuntary medication order pending appeal. Thomas's commitment order expires on August 13, 2025. Because we affirm the circuit court's order for the administration of involuntary medication, upon release of this opinion, we vacate this court's previous order granting a stay pending appeal.

is necessary to further the State's interest; and (4) involuntary medication is medically appropriate." ***J.D.B.***, 414 Wis. 2d 108, ¶32.

¶14 Thomas argues that the State did not satisfy the first ***Sell*** factor because "the non-violent offenses that Thomas is charged with do not meet the legislature's definition of serious crimes, and special circumstances reduce the government's interest in prosecuting Thomas." Thomas also argues that the State failed to satisfy the second and fourth ***Sell*** factors because Thomas's individualized treatment plan "does not identify the number of maximum dosages that may be administered on a daily, weekly, or monthly basis," nor did Dr. Kordus specify the number of maximum dosages in his testimony.

## I.      Standard of Review

¶15 "The State is required to prove the factual components of each of the four factors by clear and convincing evidence." ***State v. Green***, 2021 WI App 18, ¶16, 396 Wis. 2d 658, 957 N.W.2d 583. However, we have twice observed that neither ***Sell*** nor Wisconsin courts have specified the appellate standard of review applicable to a circuit court's determination of whether these four factors are satisfied. ***J.D.B.***, 414 Wis. 2d 108, ¶33; ***Green***, 396 Wis. 2d 658, ¶18. The majority of federal courts review the first factor de novo, although any factual findings relevant to this legal determination are subject to clearly erroneous review. ***J.D.B.***, 414 Wis. 2d 108, ¶33 (collecting cases). "These circuits also treat the remaining factors as fact questions subject to clearly erroneous review, although one circuit treats the second factor as a legal question reviewed de novo." ***Id.***

¶16 We need not reach a conclusion on what standard of review applies. We reach the same conclusion with respect to both issues on appeal whether we apply a "clearly erroneous" or "de novo" standard of review. *See **id.***, ¶34; ***Green***,

396 Wis. 2d 658, ¶20. Accordingly, we do not resolve or discuss further the parties' arguments with respect to the applicable standard of review.

## II. The First *Sell* Factor

### a. The government has an important interest in prosecuting Thomas.

¶17 Thomas argues that the State failed to prove that it has an important interest in prosecuting Thomas under *Sell*. In particular, Thomas says that the crime he was charged with is not "serious" for purposes of *Sell*, and special circumstances undermine the State's interest in prosecution.

¶18 "Before a criminal defendant can be subject to involuntary medication, 'a court must find that *important* governmental interests are at stake[,]' and the State's 'interest in bringing to trial an individual accused of a serious crime is important.'" *J.D.B.*, 414 Wis. 2d 108, ¶36 (quoting *Sell*, 539 U.S. at 180; brackets in *J.D.B.*). *Sell* does not define "serious crime," and although we analyzed this term in *J.D.B.*, we did not define it. *Id.*, 414 Wis. 2d 108, ¶36. We noted that WIS. STAT. § 969.08 defines "serious crime" for purposes of modifying or revoking bail, and that definition specifically included the crime with which J.D.B. was charged. *Id.* We also highlighted that J.D.B.'s alleged crime involved violence and carried a maximum penalty of six years of imprisonment. *Id.*

¶19 In *J.D.B.*, the defendant was charged with battery to a police officer, while in this case, Thomas is charged with resisting an officer causing soft tissue injury. *Id.* Although resisting an officer causing soft tissue injury is not listed as a "serious crime" under WIS. STAT. § 969.08, there is no requirement in *J.D.B.* that a crime *must* be listed in § 969.08 or any other statute defining "serious crime" in other contexts in order to qualify as a "serious crime" under *Sell*. There are more

similarities between the charges in *J.D.B.* and against Thomas than there are differences. For example, as was the case in *J.D.B.*, the victim of the crime Thomas allegedly committed was a police officer and the charge carried a maximum penalty of six years of imprisonment. We also observe that both the charges here and in *J.D.B.* involve bodily harm being inflicted by the defendant, although we recognize that battery involves the intentional causing of bodily harm while resisting does not.[7]

¶20    However, there is at least one aggravating factor present in this case that was not present in *J.D.B.*; namely, that Thomas reached for Officer Dalton's Taser. As the circuit court pointed out, Thomas's conduct as described in the criminal complaint comes very close to satisfying the elements of attempting to disarm a police officer under WIS. STAT. § 941.21, but that statute requires Thomas to have actually succeeded at disarming Officer Dalton.[8] Accordingly, we conclude that the State has an important interest in bringing Thomas to trial because Thomas is charged with a "serious crime" under *Sell*.

¶21    However, we do not consider the first *Sell* factor in a categorical fashion. *J.D.B.*, 414 Wis. 2d 108, ¶37. *Sell* instructs courts to "consider the facts of the individual case in evaluating the [State's] interest in prosecution. Special

---

[7] Battery to a police officer occurs when the defendant "intentionally causes bodily harm or threatens to cause bodily harm to the person ... of any ... law enforcement officer[.]" WIS. STAT. § 940.203(2); *State v. J.D.B.*, 2024 WI App 61, ¶36, 414 Wis. 2d 108, 13 N.W.3d 525, *review granted*, 2025 WI 8, ___ Wis. 2d ___, 18 N.W.3d 694. Resisting an officer causing soft tissue injury occurs when the defendant "knowingly resists ... an officer while such officer is doing any act in an official capacity and with lawful authority" and "causes substantial bodily harm or a soft tissue injury to an officer[.]" WIS. STAT. § 946.41(1), (2r). "'Soft tissue injury' means an injury that requires medical attention to a tissue that connects, supports, or surrounds other structures and organs of the body and includes tendons, ligaments, fascia, skin, fibrous tissues, fat, synovial membranes, muscles, nerves, and blood vessels." Sec. 946.41(2)(c).

[8] "Whoever intentionally disarms a peace officer who is acting in his or her official capacity by taking a dangerous weapon ... from the officer without his or her consent is guilty of a Class H felony." WIS. STAT. § 941.21.

circumstances may lessen the importance of that interest." *Sell*, 539 U.S. at 180. In *J.D.B.*, we considered several sets of special circumstances that were relevant to the *Sell* analysis, including (1) the length and lawfulness of the defendant's pretrial detention, (2) the timeliness with which the defendant receives restorative treatment after commitment but before refusing treatment, and (3) the defendant's potential for future civil commitment whether through chapter 51 proceedings, WIS. STAT. § 51.20, or as the result of successfully asserting at trial a defense of NGI. *J.D.B.*, 414 Wis. 2d 108, ¶¶40-51.

¶22 Thomas argues that he is similarly situated to the defendant in *J.D.B.* where we concluded special circumstances existed that undermined the importance of the State's interest in prosecution. *Id.*, ¶53. We disagree. First, the defendant in *J.D.B.* was a "first-time, then-19-year-old offender," whereas Thomas was a then-40-year-old, repeat offender. *Id.* Second, and importantly, although Thomas and the defendant in *J.D.B.* share similar stories with respect to their pretrial detentions and the timeliness with which they received treatment, Thomas lacks a record upon which to argue that there is significant potential of a future civil commitment. The record in *J.D.B.* reflected "a significant potential for [the defendant]'s future civil commitment" through either WIS. STAT. ch. 51 proceedings or by successfully asserting an NGI defense at trial. *Id.*, ¶41. In *J.D.B.*, we specifically stated that "the potential for [the defendant]'s future civil commitment and the length and circumstances of his pretrial detention, *taken together*, undermine the importance of the State's interest in prosecution." *Id.*, ¶53 (emphasis added). We explained that sets of special circumstances in isolation affect but do not "'totally undermine'" the importance of the State's interest in prosecution, and it was the combination of many sets of special circumstances that led to our conclusion in *J.D.B. Id.*, ¶¶38, 52-53 (quoting *Sell*, 539 U.S. at 180). Here, although the special circumstances

highlighted by Thomas lessen the State's interest in prosecuting him (*i.e.*, the length and circumstances of his pretrial detention), Thomas falls short of "totally undermin[ing]" that interest. *See Sell*, 539 U.S. at 180.

¶23 Accordingly, we conclude that the State satisfied its burden to show that it has an important interest in bringing Thomas to trial, and although special circumstances exist that lessen the State's interest, it is not "totally undermined" in this case.[9]

### III. The Second and Fourth *Sell* Factors

¶24 Thomas argues in his brief-in-chief that the State failed to satisfy the second and fourth *Sell* factors. Specifically, he says that his individualized treatment plan is constitutionally inadequate because it fails to specify the maximum number of dosages that may be administered during any given period of time. The State points out in its response brief that Thomas's individualized treatment plan specifies that medication will be administered "at bedtime," and Dr. Kordus reiterated during his testimony that medication would be administered "at bedtime." "At bedtime" indicates that medication will be administered once per day. Thomas does not respond to the State's argument in his reply brief, therefore, he has conceded it. *DNR v. Building and All Related or Attached Structures Encroaching on the Lake Noquebay Wildlife Area*, 2011 WI App 119, ¶21, 336 Wis. 2d 642, 803 N.W.2d 86.

---

[9] Because we affirm the circuit court's order for other reasons, we do not discuss the State's invocation of Marsy's Law, WIS. CONST. art. I, § 9m, and the restitution rights of crime victims. *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground[.]")

## CONCLUSION

¶25     We conclude that the State met its burden to satisfy all four *Sell* factors by clear and convincing evidence.  Thomas is charged with a serious crime under *Sell*, and although special circumstances lessen the State's interest in bringing Thomas to trial, they do not totally undermine that interest.  Additionally, Thomas conceded that his individualized treatment plan identifies the maximum number of dosages that may be administered on a daily basis.  Accordingly, we affirm the circuit court's involuntary medication order.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.